**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492; Fax (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, CA 91942
Tel: (619) 234-9000; Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: sball@einsurelaw.com

Attorneys for Plaintiffs KEIR MILAN, Individually, and on behalf of the Class;
CRISTIN MORNEAU and KELLY STRANGE, Individually, and Jointly as
Successors-in-Interest to Carolyn A. Morneau, and on behalf of the Estate of
Carolyn A. Morneau and the Class

*For Additional Counsel, See Signature Page*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIR MILAN, Individually, and on behalf of the Class; CRISTIN MORNEAU and KELLY STRANGE, Individually, and Jointly as Successors-in-Interest to Carolyn A. Morneau, and on behalf of the Estate of Carolyn A. Morneau and the Class, <br><br> Plaintiffs, <br><br> v. <br><br> PROTECTIVE LIFE INSURANCE COMPANY, an Alabama corporation; and WEST COAST LIFE INSURANCE COMPANY, a Nebraska corporation, <br><br> Defendants. | Case No.: 3:22-cv-01861-AHG <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **(1) DECLARATORY RELIEF;** <br><br> **(2) BREACH OF CONTRACT;** <br><br> **(3) BAD FAITH; and** <br><br> **(4) UNFAIR COMPETITION.** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs KEIR MILAN, individually, and on behalf of the Class; CRISTIN MORNEAU and KELLY STRANGE, individually, and Jointly as Successors-in-Interest to Carolyn A. Morneau, and on behalf of the Estate of Carolyn A. Morneau and the Class (collectively, "Plaintiffs"), make the following allegations against Defendants PROTECTIVE LIFE INSURANCE COMPANY, an Alabama corporation ("PLIC"), and WEST COAST LIFE INSURANCE COMPANY, a Nebraska corporation (collectively "Defendants") as follows:

## I.  OVERVIEW OF THE CASE

1.  Since January of 2013, Defendants have wrongfully terminated thousands of life insurance policies in violation of California law.  The unlawful activity continues to this day. Plaintiffs and the Class of Defendants' policyholders and vested beneficiaries are victims of Defendants' ongoing unlawful practices.

2.  Since January 1, 2013, every life insurer doing business in California, before it can lawfully lapse or terminate a life insurance policy for nonpayment of premium, must strictly comply with the notice and grace period provisions found in California Insurance Code sections 10113.71 and 10113.72 ("the Statutes") as well as existing in California common law.  There are no exceptions.  The legal requirements of the Statutes are simple.

3.  First, every life insurance policy must "contain" and actually grant a 60-day grace period.  This means a 60-day grace period must be actually written and contained in the terms of the contract of insurance provided to the policy owner.  During this time, premiums received must be accepted without condition and the policy owner and the insurer may not declare the policy lapsed or terminated.  Should the insured die during the grace period, the insurer must pay the policy benefits.

4.  Second, the Statutes mandate that no policy may lapse or be terminated until and unless, after a payment is due and is unpaid, the insurer mails a 30-day warning notice, not only to the policy owner, but also to any assignee, any person with interest in the policy, and a designee selected by the policy owner to receive such

notice.  The notice may only be mailed after the initial premium is due and is unpaid and must be an accurate description of the status of the policy.

5.    Next, every "applicant" for life insurance must be notified of its right to designate an individual to receive the 30-day notices provided by the Statutes prior to the issuance and delivery of the policy.   This notice must then be provided annually to the policy owner.  An "applicant" for life insurance means any form of applicant, including "applicants" for reinstatement, conversion, or any modification or change in the contract.

6.    Finally, under the terms of the Statutes, no insurer may lapse or terminate a life insurance policy for nonpayment without first strictly complying with all of these provisions. Failure to comply with all these notice provisions voids any attempted termination or lapse as a matter of law until and unless there has been compliance. None of these requirements are satisfied by substantial performance, nor are they excused by the conduct of the policy owner or the alleged subjective intent of the policy owner.   These are mandates and, absent compliance with each and every provision, no lawful termination of a life insurance policy occurs until and unless the provisions are fully and strictly satisfied.

7.    Since January 1, 2013, Defendants have systematically and purposely failed to provide full 60-day grace periods, proper notices of pending lapse or termination, or inform applicants and policy owners of their right to designate a third party to receive notices of lapse.  Further, in evaluating terminations arising from nonpayment of premium after January 1, 2013, Defendants have failed to apply these rules and undertook no evaluation of its own compliance.  This specific failure to comply is universal and implicates policies issued before the date of the Statutes' enactment (January 1, 2013).

8.    Defendants have also intentionally concealed from their policy owners and beneficiaries, and other persons and entities with interest in its life insurance products, the existence of these mandatory rules and procedures and the rights they

guarantee – rights about which Defendants would rather their customers and claimants not know. This concealment, scheme, and plan by Defendants is intentional, as is Defendants' complete disregard for the statutory mandates of California.

9.    Moreover, since January 1, 2013, Defendants have become aware of their failures and have failed to take the appropriate corrective action. Instead, Defendants appear to have doubled down and made the decision to ignore the law, ignore court rulings, and deal with the occasional complaint without regard to their obligation to apply these rules properly and completely to all of their varied life insurance products utilized in this state.

10.    Defendants' continued disregard for the law is widespread. Indeed, thousands of policy owners have lost and continue to lose the benefit, value, and security of their life insurance; have been and continue to be forced into unnecessary reinstatements; and in many instances have lost all reasonable access to any insurance at all. Ultimately, Defendants have robbed thousands of their beneficiaries of policy benefits, and thousands of insureds of the ability to have life insurance protection.

11.    The injury to Defendants' customers and vested beneficiaries continues today, with policy owners currently paying unnecessary or inflated premiums or unknowingly suffering from improper, forced "reinstatements" which diminish the value of the policies. Defendants have told numerous policy owners that they have no insurance, although their policies, unbeknownst to the policy owners, are still in force. All share the same harm and injury – an unlawfully terminated policy. Today these people, their heirs, beneficiaries, and others with interest, likely believe that the defaulted party to these policies is the policy owner, when, in fact, the only party in default and the only party which disavowed and repudiated the policy was Defendants. Beneficiaries who do make claims are having these claims denied on the false assertion that the policy was terminated when in fact, benefits are owed. Most actual vested beneficiaries do not even know that they have rights under a policy illegally terminated, which still requires payment of the benefits.

12.    The mandates of California law and the California Insurance Code were established to protect all Californians and others, primarily seniors and the ill, and apply regardless of the date of the policy's issuance. *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213 (2021).[1]

13.    Defendants' conduct and failure to comply with the Statutes is intended to take advantage of the people for whose benefit the Statutes were passed. Defendants intentionally increased the likelihood of forfeitures, which allowed Defendants to gain financially at the expense of their customers.

14.    Plaintiffs are victims of Defendants' past and continual failure to appreciate the importance and mandates of the Statutes, and to disclose those mandates to their policy owners. Plaintiffs suffered the common single harm suffered by all the Class members – the wrongful and continued repudiation of valuable life insurance policies or denial of death benefits as vested beneficiaries. Plaintiffs' experience is not unique and is one suffered by the Class as a whole.

15.    Plaintiffs bring this action to recover for the injuries and damages and/or for the Court to fashion appropriate remedies necessary and resulting from these violations, not only for their benefit, but also on behalf of the numerous California policy owners and beneficiaries who have also been denied and continue to be denied the benefits of California law. Plaintiffs also request injunctive relief intended to ensure PLIC's future compliance with these important consumer safeguards and to prevent the ongoing violations of these important Statutes.

---

[1] Recently, the Ninth Circuit upheld a decision by a district court concluding that failure to strictly comply with the provisions of Insurance Code sections 10113.71 and 10113.72 does not legally terminate a life insurance policy purportedly in default, and, that if a death of an insured occurs, policy benefits are owed. *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 U.S. App. LEXIS 30035 (9th Cir. Oct. 6, 2021); *see also, Bentley v. United of Omaha Life Ins. Co.*, No. 2:15-cv-07870-DMG(AJWx), 2018 U.S. Dist. LEXIS 117107 (C.D. Cal. May 1, 2018); *Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-cv-1709-JO-WVG, 2023 U.S. Dist. LEXIS 141961, at *11 (S.D. Cal. Aug. 14, 2023) (holding that failure to comply with the Statutes means a policy cannot lapse).

## II.    THE PARTIES

16.    Plaintiff Keir Milan is an individual. Mr. Milan is the insured and owner of a life insurance policy issued by a subsidiary of PLIC. Mr. Milan is and has been a resident of Ventura County, California. Plaintiff Milan pursues these claims and causes of individually and on behalf of the Class.

17.    Plaintiff Cristin Morneau is an individual. At various times relevant herein, Cristin Morneau was a resident of California in the County of San Francisco and is now a resident of Louisiana. Cristin Morneau is the sole biological daughter of decedent Carolyn A. Morneau (sometimes, "Mrs. Morneau") and is a joint Successor-in-Interest to the Estate of Carolyn A. Morneau. Plaintiffs Morneau and Strange are informed and believe that, at the time of decedent's death, Cristin Morneau was an express beneficiary of the Policy and/or was an intestate heir of Mrs. Morneau or other person allowed to prosecute claims arising from economic injury to Mrs. Morneau prior to her death under California Welf. & Inst Code section 15657.3(d)(1) and Probate Code section 48, as confirmed in the attached **Exhibit A** and as incorporated by reference in Plaintiffs' Declaration pursuant to Cal. Code Civ. Proc. section 377.32. Plaintiff Morneau pursues these claims and causes of action individually, as a joint Successor-in-Interest to the Estate of Carolyn A. Morneau, and on behalf of the Class.

18.    Plaintiff Kelly Strange is an individual. At all relevant times, Kelly Strange was a resident of California and has at most times relevant to this matter resided in the County of Orange. Kelly Strange is the sole son of decedent Mrs. Morneau and is a joint Successor-in-Interest to the Estate of Carolyn A. Morneau. Plaintiffs Morneau and Strange are informed and believe that, at the time of decedent's death, Kelly Strange was an express beneficiary of the Policy and/or was an intestate heir of Mrs. Morneau or other person allowed to prosecute claims under California Welf. & Inst. Code section 15657.3(d)(1), arising from economic injury to Mrs. Morneau prior to her death. Plaintiff Strange pursues these claims and causes of action individually, as a joint Successor-in-Interest to the Estate of Carolyn A. Morneau, and

1    on behalf of the Class.

2        19.    Defendant Protective Life Insurance Company, an Alabama corporation,

3    (collectively, "PLIC") along with various forms of affiliate insurance companies,

4    holding companies, parent and related subsidiary companies, and during all times

5    relevant herein, conducted business as one or more licensed insurers in the state of

6    California, was involved in the sale and maintenance of life insurance, and was

7    licensed to sell and maintain life insurance in the state of California. PLIC is a wholly

8    owned subsidiary of Protective Life Corporation (hereinafter, "PLC").  PLC is an

9    insurance holding company which owns and controls insurance companies, including

10   PLIC, as well as those companies hereinafter described as "affiliated companies."

11   Plaintiffs are informed and believe that PLIC is a member of NAIC Group #0458, in

12   which all companies are under the common ownership, control, and administration of

13   PLC, utilizing the same procedures, internal rules and regulations, and operating in

14   various capacities as members of either Protective Life Insurance Company or

15   "Protective Life."  Plaintiffs are informed and believe that, as of January of 2018, PLC

16   and PLIC are wholly owned and controlled by the Japanese corporation Dai-ichi Life

17   Holdings, Inc., the ultimate controlling company of PLC.  For purposes of this action,

18   Plaintiffs collectively refer to PLC and Dai-ichi Life Holding, Inc., and the members

19   of NAIC Group #0458, as well as subsidiaries of PLIC, as "affiliated companies."

20       20.    Plaintiffs are informed and believe that PLIC commonly receives life

21   insurance premiums from California residents on an annual basis of more than $177

22   million a year, representing the most significant source of income and profit for PLIC

23   and its affiliated companies and owners.

24       21.    Plaintiffs are also informed and believe that PLIC, or corporations that it

25   controls, acts as an administrator for other life insurers doing business in the state.

26   Plaintiffs are informed and believe that, pursuant to individual contractual agreements

27   with other licensed insurers, PLIC acts and controls the administration of life

28   insurance products beyond those owned by PLIC, including, but not limited to, those

which are part of NAIC Group #0458. Plaintiffs are thus informed and believe that PLIC has at various times from 2013 until the present also derived profit and income from management and/or administration of other life insurers doing business in the state. As further explained below, Plaintiffs are informed and believe that PLIC's administration of other insurance companies mirrors PLIC's own administration of PLIC's policies with no discernable difference. Plaintiffs are informed and believe that the administration of these policies in the state of California is coordinated by agents and managers residing and/or operating out of the San Francisco and Sacramento regions.

22.     Various forms of insurance companies, agents, insurance brokers or other licensed insurance entities or individuals transacting the business of insurance in this state at all relevant times and engaged in and operating in conjunction with PLIC in a manner unknown to Plaintiffs at this time to cause and/or contribute to the injuries and allegations herein described.

23.     Other forms of business and/or businesses and various forms of national and/or state trade unions, lobbyist organizations, law firms, and other organizations and/or individuals involved in the business of insurance in the state of California, at relevant times, which provided counsel, advice, funds, and other forms of assistance in the planning and execution of PLIC's common scheme and plan to commit fraud and concealment to avoid compliance with California law, as described herein, and avoid payment of claims similar to Plaintiffs' claims.

24.     Defendant West Coast Life Insurance Company is a Nebraska corporation engaged in business involving the sale and administration of life insurance throughout the United States and other territories. West Coast Life Insurance Company is licensed to conduct business and does business throughout California. West Coast Insurance Company is a licensed/chartered life insurance carrier in California and is subject to regulation by California authorities.

### III.  JURISDICTION

25.    Defendant PLIC removed this action from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. Sections 1332, 1441, and 1446.  PLIC did so on the grounds that, when the initial Complaint was filed, complete diversity of citizenship existed and because the amount in controversy exceeded the jurisdictional minimum. *See* Dkt. 1.  Subsequently, the action was transferred to this Court.  *See* Dkt. 15.  Complete diversity of citizenship continues to exist with addition of Plaintiff Milan in the First Amended Complaint.

### IV.  THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72

26.    In 2012, after extensive and open hearings and public consideration, including with Defendant and all other major insurance companies doing business in California, the California Legislature enacted Insurance Code sections 10113.71 and 10113.72 (i.e., the "Statutes"), which instituted procedural requirements for the termination and lapse of life insurance policies.  The Statutes were written to avoid unintended forfeiture of life insurance policies primarily being suffered by the elderly and the ill. The Legislature found that there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment, despite having faithfully and timely paid for many years.  But the Statutes were nonetheless also designed to apply to all forms of life insurance.

27.    Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws in effect as of January 1, 2013, mandate that every life insurance policy in or governed by California law, including policies that have issued, been delivered, renewed, reinstated, converted or otherwise become subject to the jurisdiction of California, shall contain a 60-day grace period and that the policy shall remain in force during the grace period.  Cal. Ins. Code § 10113.71(a).

28.    The provisions further require that, before any individual life insurance

policy governed by California law is lapsed or terminated for nonpayment of premium, a 30-day written notice of pending lapse or termination must be mailed, not only to the policyholder, but also to any additional person who has been designated to receive such notice, as well as to any person having any interest in the policy. Cal. Ins. Code § 10113.72(b)(1); and *see* Cal. Ins. Code § 10113.72(c) (dealing with designee notification).

29.    The provisions also mandate that the insurer, on an annual basis, as well as during any application process, notify the policy owner of an "individual policy" of his or her right to designate additional notice recipients. This again is an obligation owed on any policy within the jurisdiction of California.

30.    Finally, the Statutes mandate that no lapse or termination is effective unless every one of the applicable provisions is strictly complied with. The Statutes codified existing California law on strict compliance with forfeiture provisions.

31.    The provisions are applicable individually and severally to all life insurance policies governed by California law.

32.    More specifically, Section 10113.71 originally reads as follows:

**§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement**

(a)  Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class mail within 30 days after a premium is due and unpaid.

33.     These provisions were intended to standardize the procedures and notices used by life insurers to terminate policies.  The Statutes further codified long-standing California law and policy regarding the state's desire to protect policy owners and beneficiaries from loss of insurance resulting from the failure, *e.g.*, to pay a single premium after years of timely payments.

## V.     DEFENDANTS' VIOLATIONS OF LAW

34.     In 2012, Defendants were made fully aware of the drafting and enactment of these provisions.  And through its own lobbying groups and regulatory advisors, Defendants understood how and in what fashion the Statutes would apply.  Prior to

enactment, Defendants made no attempt to object to the enactment of the Statutes, which are the subject of this litigation.

35.    Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendants have failed to fully comply with the Statutes. Defendants have treated policies differently based on their date of issuance and the type of policy.

36.    Specifically, Defendants have not strictly complied with the Statutes regarding individual policies issued or delivered in the state of California prior to January 1, 2013.

37.    Defendants have failed to provide full 60-day grace periods contained in the policy by either not actually attaching or making the grace period a physical part of the policy, improperly advising policy owners and/or claimants of the wrong grace period, not accepting premiums without conditions during the grace period or inaccurately declaring a policy terminated prior to the expiration of the grace period, which amounts to a repudiation of the policy.

38.    Defendants have failed to mail accurate 30-day pending lapse notices to the policy owner and/or designee either by inaccurately describing the actual grace period, by failing to mail to those recipients the notices required by law and/or by providing insufficient time periods, as required by law.

39.    Defendants have failed to provide annual notifications to policy owners entitled to such notices of their rights to designate.

40.    Defendants have failed to apply the mandates of the Statutes, which are absolute conditions for termination of any policy for nonpayment of premium, and instead excuses their noncompliance based on the inaccurate, perceived intentions of the policy owner or other irrelevant grounds or justifications.

41.    Defendants have treated policy owners directly and indirectly as if they are in default for payment of premiums, when, in fact, in every instance, Defendant first violated the terms of the policy and/or Statutes prior to any actual default by any policy owner.

42.    Defendants have imposed new conditions on terminated policies, including the demand for repayment of unearned premiums, as well as ignoring the consequences of non-compliance with the Statutes.

43.    Defendants have been aware since 2013, that all of their policies administered in the state of California and in force after January 1, 2013, were to be administered consistent with these provisions.  However, Defendants have acted in contravention and violation of various Insurance Code provisions, other than the Statutes, including regulatory mandates and the implied covenant of good faith and fair dealing implied in every insurance contract in California.

44.    In August of 2021, Defendants learned that the California Supreme Court had confirmed that the Statutes applied to all in force life insurance policies in the state as of or after January 1, 2013, including, Plaintiff Milan's policy and Plaintiffs Morneau and Strange's late-mother's policy, but have yet to acknowledge this fact, inform its insureds and still refused to comply with the law after August 2021.

45.    Finally, Plaintiffs are informed and believe that Defendants have failed to institute appropriate training and education of its sales and underwriting staff, as well as its claims personnel and others, whose knowledge of these rules is essential for Defendants' operation. Plaintiffs are informed and believe that additional violations of the Statutes have also occurred, which will be disclosed during this litigation.

## VI.    PLAINTIFFS MORNEAU & STRANGE'S LATE-MOTHER'S POLICY, TERMINATION, AND REPUDIATION OF DEATH BENEFIT CLAIM

46.    Plaintiffs Morneau and Strange's experience with PLIC is representative of PLIC's ongoing course of misconduct and noncompliance.

47.    In 1996, Mrs. Morneau purchased a policy of life insurance, hereinafter referred to as the "Morneau Policy."  The Morneau Policy insuring Ms. Morneau's life was in the amount of $250,000 and provided for payment to designated

beneficiaries, solely upon proof that Mrs. Morneau died while the policy was in force. The Morneau Policy was initially issued by Federal Kemper Life Assurance Company and Chase Insurance Life and Annuity Company, which merged with and into PLIC, which assumed responsibility for the contractual obligations in 2007.  In 2011, the Morneau Policy began to be administered solely by PLIC. The Morneau Policy was both issued and delivered to Mrs. Morneau as a resident of California and thereafter the policy was annually renewed through payments made from California.

48.    The basic promise and grant of coverage in the Morneau Policy provided that if the policy was in force at the time of the death of the named insured, Mrs. Morneau, the policy face amounts, $250,000, would be paid to the named beneficiaries. Plaintiffs Morneau and Strange are informed and believe that premiums were to be paid annually at guaranteed rates through the first 20 years and thereafter insurance was guaranteed until a certain date in the future, beyond the date of Mrs. Morneau's actual death. While specific premiums were not guaranteed beyond 20 years, premiums were to be set in a fair and reasonable fashion--governed by California law--and coverage was guaranteed to Mrs. Morneau, consistent with the payment and termination provisions contained in the Morneau Policy and until the expiration date of the policy. Plaintiffs Morneau and Strange are informed and believe that, under the terms of the Morneau Policy, premium payments were to be paid in renewal of the policy on the Policy Anniversary date of February 1, renewing the coverage each year from 1996 until the Morneau Policy terminated either by the death of the named insured or as of the expiration date. Plaintiffs Morneau and Strange are informed and believe that, upon issuance, the Morneau Policy only contained a 31-day grace provision and contained a promise to not contest payment of any claim made after the policy had been in force for a period of two years, save for non-payment of premium. Plaintiffs Morneau and Strange are informed and believe that the Morneau Policy contained an integration clause and did not allow amendment, except in writing and signed by select officers of PLIC. The Morneau Policy did not contractually bind

the parties to any obligations not contained in the policy or applicable statutory authority and did not bind PLIC to any informal and administrative standards or procedures.

49.     Plaintiffs Morneau and Strange are informed and believe that the Morneau Policy also did not contain any obligation to present a claim for benefits in any specific time and a claim could be made at any time after the death of the named insured.

50.     Plaintiffs Morneau and Strange allege that the Morneau Policy provided that, upon the death of the named insured while the Policy was in force, the obligation of payment by PLIC was perpetual. Thus, the rights to payment under the Morneau Policy upon the death of the insured were permanent and were not bound by any time limitation in which to present a claim for payment by PLIC.

51.     Plaintiffs Morneau and Strange are informed and believe that, after issuance and delivery, the Morneau Policy was designed to remain in force until terminated by the terms of the Policy and/or pursuant to state law or the death of the insured, at which point the obligation to pay benefits would become perpetual.

52.     Plaintiffs Morneau and Strange are also informed and believe that the Morneau Policy contained a Reinstatement provision that allowed Mrs. Morneau to apply for and receive reinstatement on certain conditions, based on certain contractual provisions in the case of an actual and effective lapse and termination of the Policy arising from nonpayment of premium. Plaintiffs Morneau and Strange are informed and believe that duties and rights associated with the Restatement provision remained in force with PLIC and Mrs. Morneau, regardless of the legitimacy of any purported lapse and termination.

53.     Plaintiffs Morneau and Strange are informed and believe that the Morneau Policy did not contain any exceptions or exclusions allowing denial of the claim based on the intent of the parties in the payment or nonpayment of premiums, nor did the Policy contain any provision allowing denial of a claim based on the

application of the statute of limitations applicable to civil causes of action.

54.    Plaintiffs Morneau and Strange are informed and believe that the Morneau Policy did not allow denial of a claim based on the assertion or possible application of any statute of limitation or a right of a party to seek relief through prosecution of civil action. The ability of a beneficiary to prosecute a claim in civil court was not a condition of coverage, payment, or the right to maintain a policy in force.

55.    Plaintiffs Morneau and Strange are informed and believe denial of a claim could only be based on the written terms of the Morneau Policy in compliance with state law.

56.    To Plaintiffs Morneau and Strange's knowledge, the Morneau Policy and its terms were never amended, modified or changed prior to Mrs. Morneau's death. Plaintiffs Morneau and Strange are informed and believe the Morneau Policy was never amended by PLIC by way of endorsement or in any manner consistent with the mandates of Insurance Code section 10113.71(a).

57.    At all times, from its inception until today, the Morneau Policy was governed by the provisions of the California Insurance Code, including, but not limited to, the provisions of California Insurance Code sections 41, 330, 332, 790.03, 10111, 10113.5, 10508, and, from January 1, 2013, until the present, by the provisions the Statutes. At all times, the original terms and conditions of the Morneau Policy contemplated and required ongoing compliance with the California Insurance Code and certain regulatory provisions contained in the California Code of Regulations.\

58.    As of January 1, 2013, the Morneau Policy had been altered by California law, not only through the enactment of Insurance Code section 10113.71(a), but also through application of California common law through the annual renewal of the Morneau Policy, both of which then required full compliance to effectuate a lapse and/or termination of the Policy for any form of nonpayment of premium under the Statutes.

59. Plaintiffs Morneau and Strange thus allege that the Morneau Policy remained in full force and effect from the date of its original issuance and delivery until January 22, 2022, when, upon the death of the named insured, Mrs. Morneau, the contractual obligation to pay benefits vested to the beneficiaries of the Policy with said obligation continuing to this date.

60. Plaintiffs Morneau and Strange allege that for no period prior to January 22, 2022, did the Morneau Policy lapse and become terminated, arising from nonpayment of premium. Nothing in the law or the terms of the Policy allowed PLIC to terminate the Policy, except upon explicit compliance with the terms of the Policy and the Statutes described herein.

61. From January 1, 2013, through at least February 1, 2017, Defendant failed to comply in any fashion with the Statutes.

62. PLIC specifically failed at any time in 2013, 2014, 2015, 2016 and in 2017 to formally amend the terms of the Morneau Policy or provide any endorsement adding a 60-day grace provision.

63. PLIC specifically failed at any time in 2014, 2015, 2016 and then in 2017 to provide notice to Mrs. Morneau of her right to designate a recipient of any lapse or termination notice.

64. In or about February of 2017, Defendant terminated the Morneau Policy for nonpayment of premium but failed to comply with the provisions of Ins. Code sections 10113.71(b)(1) and 10113.72(c) and, as such, any purported termination of the Policy was void and ineffective. Specifically:

      a. The Morneau Policy was purportedly terminated based on the wrongful and inaccurate date of effective termination in noncompliance with Sections 10113.71(a) and (b)(1); and

      b. The Morneau Policy was purportedly terminated without the required proof of mailing of notices under Sections 10113.71(b)(1) and 10113.72(c), in that there were no timely notices, the notices

that were sent were not sent to all of the required recipients, and there is no proof of actual mailing as required by Section 10113.72(c).

65.   In or about February of 2017, Defendant PLIC further violated the Statutes by declaring and asserting that the Morneau Policy had been effectively lapsed and terminated for nonpayment of premium, when, in fact, there was no effective termination.

66.   From February of 2017 until 2022, PLIC knew it had misrepresented to Mrs. Morneau the actual legal status of the Morneau Policy and knew that the Policy had not been effectively terminated for nonpayment of premium. These acts were concealment, as defined by California Insurance Code section 330.

67.   Plaintiffs Morneau and Strange are informed and believe that, within six months of 2017, PLIC then illegally and with knowledge of its illegality, released certain amounts of reserves mandated to be held by PLIC under the laws of the state of California to secure the payment of claims under the Morneau Policy and others. The release of these reserves was improper and undertaken with the intent and purpose of taking advantage of Defendant PLIC's noncompliance with the Statutes and to wrongfully benefit from PLIC's misconduct. Plaintiffs Morneau and Strange are informed and believe that said reserves remain improperly released and have not been properly reallocated under state law as of this date.

68.   On January 22, 2022, Carolyn A. Morneau died. She had been hospitalized since August of 2021, suffering from dementia and Alzheimer's, ultimately succumbing to COVID-19.

69.   Upon their mother's death, and with the understanding that they were named or ultimate beneficiaries of the Policy, contact was made with PLIC to present a claim. On or about January 25, 2022, Plaintiffs Morneau and Strange submitted an online claim.

70.   Upon contact, PLIC advised that the Policy had lapsed and had been

terminated for nonpayment of premium in 2017. The representations made to Plaintiffs Morneau and Strange in this regard were untrue.

71.    Prior to retention of counsel, Plaintiffs Morneau and Strange advised PLIC that there had not been compliance with the provisions of Insurance Code sections 10113.71 and/or 10113.72, and, as such, the Morneau Policy was in force on the date of Plaintiffs' mother's death. In response, PLIC admitted it had failed to comply with the Statutes, but nonetheless refused to acknowledge coverage and pay the claim. The denial of the claim was a continuing act in defiance of the law which mandated that compliance was required for there to be an effective termination of the Policy for nonpayment of premium. The denial was not based on any good faith investigation or consideration of the Morneau Policy termination or status of the Policy as of the date of Mrs. Morneau's death.

72.    Rather than comply with the law and acknowledge the legal inadequacy of the purported termination, PLIC further violated the law by denying the claim based on a unilateral and self-serving (and false) conclusion that Mrs. Morneau must have intended to cancel the Morneau Policy. No such right existed under the law or the terms of the Policy and, in fact, there was no good faith basis to reach this conclusion.

73.    PLIC further violated the law, as well as the terms of the Morneau Policy, by demanding that Plaintiffs Morneau and Strange, as vested beneficiaries of the Policy, present evidence to PLIC concerning PLIC's illegal assertion that Mrs. Morneau's state of mind or motivation related to the nonpayment of premium was a legal and relevant contract provision. It is not, and the false assertion and suggestion to Plaintiffs Morneau and Strange that it was Plaintiffs' obligation to present evidence from 2017 concerning their mother's state of mind was patently absurd, illegal and all part of Defendants' deceit and plan to avoid compliance with the law. PLIC's basis and justification for denying the consequence of its violation of the law and failure to comply with the terms of the Morneau Policy was without proper cause.

74.    PLIC further violated the law by wrongly and illegally asserting that

Plaintiffs Morneau and Strange's capacity to seek legal redress was somehow lost or diminished due to the state's statute of limitation provisions. This assertion--also improperly used to deny benefits--was also untrue. PLIC intentionally asserted misleading and inaccurate information regarding the applicable statute of limitations as part of a plan, scheme and course of conduct designed to mislead policy owners and beneficiaries in violation of Ins. Code section 790.03(h)(15), in addition to those previously referenced.

75. PLIC further violated the law, as well as the terms of the Morneau Policy, by then reasserting that its conduct had somehow been officially ratified by the DOI, which, as described above, was not true.

76. When PLIC expressed these bases and justifications for denial of Plaintiffs Morneau and Strange's claim, PLIC was consciously aware that these bases and justifications were false and untrue. Nonetheless, PLIC's officers, directors and managing agents approved and ratified these false assertions.

77. As a result of PLIC's repeated refusal to acknowledge that the Morneau Policy was in force on the date of Mrs. Morneau's death, thus requiring payment of the claim, Plaintiffs Morneau and Strange retained counsel to recover those benefits and to require PLIC to pay the claim, as well as compensate Plaintiffs for other injuries and damages.

## VII. PLAINTIFF MILAN'S POLICY & LAPSE/TERMINATION

78. In or around April 2004, Keir Milan purchased a Universal Life Insurance Policy in California from West Coast Life Insurance Company, a subsidiary of PLIC. The policy number on the subject policy is ZUA399647 (the "Milan Policy").

79. The Milan Policy was purchased in California, was issued and delivered in California, and premiums were all paid from California, such that it was and continues to be governed by the laws of the state of California, including, but not limited to, the Statutes.

80.    Plaintiff Milan stayed current on the policy and faithfully paid premiums for nearly 20 years, and well beyond enactment of the Statutes by the California Legislature in 2013.  Plaintiff Milan did not miss a premium payment until around June 2022, when he purportedly missed a payment.  PLIC lapsed or terminated the Milan Policy in or around August 2022 for nonpayment of premium.

81.    Based on information and belief, as of the date of purported lapse or termination of the Milan Policy, PLIC violated one or more provisions of the Statutes.

82.    Initially, prior to discovery and investigation, it appears PLIC violated at the least Cal. Ins. Code section 10113.72(b) by not annually notifying Mr. Milan of a right to designate.

83.    PLIC also appears to have terminated the Milan Policy without compliance with the provisions of Cal. Ins. Code section 10113.71(a), which mandated a 60-day grace period.

84.    PLIC also appears to have failed to provide notices, as required by Cal. Ins. Code sections 10113.71(b)(1) and (3).

85.    PLIC then appears to have violated Insurance Code sections 10113.71 and 10113.72, when it claimed the Milan Policy had lapsed or terminated. In fact, however, under the provisions of Sections 10113.71(b)(1) and 10113.72(b), no legal termination had occurred. PLIC never complied with the strict compliance aspects of the Statutes in any respect.

86.    As of August 2021, PLIC compounded its violations of the Statutes by failing to comply with the Statutes and their ongoing duty of good faith and fair dealing not only as to the Milan Policy but to other Class policy owners and vested beneficiaries.

87.    Each violation was a material violation of law and a material breach and repudiation of the Milan Policy, thereby excusing any further performance by Mr. Milan of tendering premiums to maintain the policy in force or imposing any requirements or conditions. PLIC was in contractual breach and remained in breach

of the policy at all times from at least January 1, 2013, until the date of this filing. As a result of each and every violation, there was harm and injury to Plaintiff Milan.

## VIII.  **CLASS ACTION ALLEGATIONS**

88.   Plaintiffs are informed and believe that Defendants have not, since at least January 1, 2013, properly and fully complied with the provisions of Insurance Code sections 10113.71 and/or 10113.72. Since that time, Defendants have failed and continues to fail to provide these protections to policy owners and their beneficiaries.

89.   Plaintiffs bring this action on behalf of all members of the proposed Class, as follows:

**The Class:**

All owners and beneficiaries (where the insured has died) of individual life insurance policies issued or delivered in California by Defendants, their predecessor insurers, or which were later acquired by or became the responsibility of Defendants,  and which, on or after January 1, 2013, lapsed or terminated for nonpayment of premium without Defendants,  or their predecessor insurers, first providing all the protections required by Insurance Code sections 10113.71 and 10113.72.

90.   ***Numerosity.***   The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands of members.  The true number of members is known or ascertainable by the Defendants, as is their identities.  Thus, Class members may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

91.   ***Existence and Predominance of Common Questions and Answers of Law and Fact***.  There is a well-defined community of interest in the questions and answers of law and fact involved affecting Class members.  The questions and answers of law and fact common to the Class predominate over questions and answers affecting only individual Class members, including, but not limited to, the following:

a.   Have Defendants violated and continued to violate the provisions of Sections 10113.71 and 10113.72?;

b.   Are Defendants continuing to refuse to provide the protections afforded by the provisions of Sections 10113.71 and 10113.72?;

c.   Whether Defendants' life insurance policies have been ineffectively lapsed, terminated, or subsequently unnecessarily modified through reinstatement?;

d.   Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendants' failure to comply with the Insurance Code?; and

e.   Should Defendants be required to make payments to beneficiaries of policies where the insured has died, and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

92.   ***Typicality.***  Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and each member of the Class were victims of the same statutory violations.  Further, Plaintiffs' claims are typical of the claims of their fellow Class members, which all arise from the same operative facts involving the Defendants' unlawful violations of Sections 10113.71 and 10113.72.

93.   ***Adequacy of Representation.***   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no interest adverse or antagonistic to that of the Class.

94.   ***Superiority***.  A class action is a superior method for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized

litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class members remain unaware of their rights and without this Class action, would remain unaware of their rights and benefits.

95.    In the alternative, the Class may also be certified because:

a.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

c.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

96.    Unless the Class is certified, Defendants will retain monies received because of its conduct taken against the Class members and the Plaintiffs. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and members of the Class will continue to be harmed.

97.    Plaintiffs know of no difficulty likely to be encountered in the

management of this litigation that would preclude its maintenance as a class action. Because the action is brought as a class action, the Court need only apply a single set of California laws as they relate to Defendants' violation of Sections 10113.71 and 10113.72.

98.    Plaintiffs have incurred, and will incur, expenses for attorney's fees and costs in bringing this action.  These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the Class.

### IX.    FIRST CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT OR RELIEF
**(By Plaintiffs, Individually, on Behalf of the Estate of Caroly A. Morneau, and on Behalf of the Class)**

99.    Plaintiffs incorporate by reference every allegation contained above.

100.    Under California law, "[a]ny person interested under a written instrument… or under a contract, or who desires a declaration of his or her rights or duties with respect to another… may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," maintain a complaint or cross complaint "for a declaration of his or her rights and duties." Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Code § 1060.

### A.    Basis for Relief

101.    On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately and thereafter read into all in-force policies, regardless of the date of issuance. The provisions were further intended to require compliance by all life insurance policies – including, but not limited to, both group and individual – that came within the jurisdiction of California, including, but not limited to, policies that renewed or somehow continued in force on or after January 1, 2013.

102.   These Statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from nonpayment of premiums which may occur from the date of enactment and thereafter.

103.   The amendments were not intended to relieve or waive a policy owner's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law. Each of these statutory requirements was intended to stand alone.

104.   Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Ins. Co. v. Norton*, 96 U.S. 234, 242 (1978). "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.*, 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

**B.    There is an Actual Controversy Requiring a Declaration of Rights and Duties**

105.   An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties under the California Insurance Code and the Policy. Plaintiffs contend that Sections 10113.71 and 10113.72 apply to the subject Policy, as well as to all of Defendants' individual and group California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013. Plaintiffs also contend that these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter. Defendants contend that policies terminated without the protection of California Insurance Code sections 10113.71 and 10113.72 nevertheless remained terminated and that policy owners are not entitled to the revival of their policies and

FIRST AMENDED CLASS ACTION COMPLAINT

that vested beneficiaries are not entitled to any death benefits.

106. Plaintiffs contend that the violations of the Statutes, as described herein, all invalidate and void any attempts to terminate the subject policies and/or act as a repudiation of those policies.

107. Plaintiffs desire a judicial determination of rights and duties and a declaration or judgment that Sections 10113.71 and 10113.72 must be strictly complied with in order to terminate a policy for nonpayment of premium.

108. Plaintiffs desire a judicial determination that Defendants' life insurance policies in California must contain a 60-day grace period in the written contract.

109. Plaintiffs desire a judicial determination that Defendants' failure to annually provide notice of a right to designate a third party to receive notices of pending lapse under Section 10113.72 renders a policy termination ineffective, leaving the policy in force.

110. Plaintiffs desire a judicial determination that Defendants are not entitled to premium payments for periods of time where Defendants declared a policy terminated in violation of Sections 10113.71 and 10113.72.

111. Plaintiffs desire a judicial determination that the Subject Policy and Class policies were not properly terminated in conformance with Sections 10113.71 and 10113.72.

112. A judicial declaration would advise insureds and their beneficiaries of their rights and would advise Defendants of their duties to Plaintiffs and to Class members concerning policy owners' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period. A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## X.   SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
**(By Plaintiffs, Individually, on Behalf of the Estate of Caroly A. Morneau, and on Behalf of the Class)**

113.   Plaintiffs incorporate by reference every allegation contained above.

114.   Defendants breached and continue to breach the express terms of their life insurance policies, including the Milan and Morneau Policies, as well as the statutory mandates regarding such policies, by, amongst other things:

a.   Failing to include in such policies and/or failing to provide a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

b.   Lapsing and/or terminating policies before expiration of the 60-day grace period;

c.   Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination;

d.   Failing, where applicable, to provide proper notice to policy owners on an annual basis of the policy owners' right to designate individuals to receive notices of pending lapse or termination;

e.   Lapsing or terminating policies without strictly complying with the terms of the policies;

f.   Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendant had not strictly complied with the terms of the policies;

g.   Improperly requiring reinstatement of policies that had not lapsed or terminated, and which were not required or were not subject to reinstatement;

h.   Failing to pay benefits or claims;

i.   Failing to provide the notices required by the policy; and

j.    Failing to apply the applicable law to the insurance contract by repudiating policies of insurance for nonpayment without strict compliance with the provisions of the Statutes.

115.    Under the terms of the subject Policies and Class policies and consistent with laws of California, Defendants were required to mail the required notices, effectuate the change of the policies to include the proper grace period, and was required to notify policy owners of their right to designate every year as well as during any application. Plaintiff Milan and Plaintiffs Morneau and Strange's late-mother were entitled to be mailed written notice prior to the effectuation of any lapse or termination for nonpayment. Defendants sent no such notice and, thus, breached the insurance contract by failing to provide that notice.

116.    All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the Milan and Morneau Policies, as well as express material repudiations of the contracts. To the extent any contractual obligations, duties, or conditions are imposed on policy owners or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendants' material breaches.

117.    Defendant's conduct caused injury upon the false, wrongful, and inadequate termination of coverage, and ultimately in refusing to pay the claim. Plaintiffs and their fellow Class members suffered harm through the loss of coverage, the loss of peace of mind related to the existence of coverage, the capacity to utilize the years of investment in wrongfully-lapsed and terminated policies, and through the denial of claims.

118.    To the extent any policy owners and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendant is estopped from asserting such conditions due to its conduct and material breaches.

119.    As a legal and proximate result of the conduct described herein, the Class

has suffered direct and foreseeable economic damages, including loss of policy benefits and/or the values of the policies, in a nature and amount to be proven at the time of trial.

## XI.    THIRD CAUSE OF ACTION
### BAD FAITH
**(By Plaintiffs Morneau and Strange, Individually, and on Behalf of the Estate of Carolyn A. Morneau)**

120.   Plaintiffs Morneau and Strange incorporate by reference every allegation contained above.

121.   At all relevant times, Plaintiffs Morneau and Strange were the intended beneficiaries of the Morneau Policy, entitled to benefits owed under the Policy, and entitled to the benefit of the implied covenant of good faith and fair dealing associated with those benefits.

122.   At all relevant times, Defendant owed Plaintiffs Morneau and Strange, as well as Mrs. Morneau, an obligation to perform the express and implied obligations imposed by the Morneau and Strange Policy, to act in good faith, to deal fairly with Plaintiffs Morneau and Strange and Plaintiffs' mother prior to her death, and to not interfere with Plaintiffs' rights to receive the benefits of the Policy. These duties included not only the duty to pay the Morneau Policy benefits to the named beneficiary upon the death of the insured, but also Defendant's ongoing promise to accept and receive premiums and maintain the coverage at the premium amounts scheduled, as well as to continue to offer other benefits contained in the Morneau Policy, including the ability to borrow and increase the amount of coverage, amongst other items. These obligations included, but were not limited to, being honest with Plaintiffs Morneau and Strange and Mrs. Morneau, refraining from concealing material information, and always strictly complying with the provisions of California law arising from Defendant's specific duties imposed and arising from the privilege of conducting business in the state of California.

123.   At all times, relevant herein, including during the pendency of this action,

PLIC, specifically, had and has an obligation to be honest, fair, and impartial in the consideration of Plaintiffs Morneau and Strange's claims, as well as refrain from asserting its interests over those of Plaintiffs' interests. These obligations include performing fair and complete investigations, and thoroughly investigating and considering any perceived or actual legal or factual disputes. These obligations include maintaining required documentation and evidence concerning the subject insurance and, where reasonable, to advise and fully disclose to policy owners, beneficiaries, or others with legitimate interests in the insurance, all material facts and information.

124.    These duties also prevent PLIC from asserting bases for denial of coverage which do not exist in the law or in the express terms of the Morneau Policy and prevent PLIC from treating policy owners and/or beneficiaries in an unreasonable, adversarial fashion.

125.    The obligations and duties described herein and described before have existed from the inception of the Morneau Policy and continue through the pendency of this action. By its conduct described above, Defendants have materially breached the terms and conditions of the Morneau Policy and the statutory mandates of California law by engaging in the acts described herein, by failing to comply with the laws of this state and, ultimately, by improperly asserting the lapse and purported termination of the Morneau Policy, as well as refusing payment of a valid claim without proper cause and/or investigation.

126.    Based on these facts, and other facts that will be developed in this litigation, Defendants, at all relevant times and to date, based on these acts and the common scheme and plan discussed here, have breached the covenant of good faith and fair dealing owed to Plaintiffs Morneau and Strange and to Plaintiffs' mother by failing to comply with the terms of the Morneau Policy, by asserting provisions and requirements which do not exist, by misrepresenting the facts concerning the law, by failing to completely investigate their attempts to terminate the Policy, by failing to

abide by the Policy and the Statutes, by placing Defendants' interests above those of their policy owners, by unreasonably asserting Policy provisions without considering the actual facts and the law, by misrepresenting Policy terms and conditions, by misrepresenting and misapplying the law, and by, amongst other things, failing to comply with proper industry standards and customs regarding lapse or termination of life insurance policies.

127.   Plaintiffs Morneau and Strange also allege that the great preponderance of evidence supports the conclusion that Defendant PLIC's violation and refusal to comply with the provisions of Ins. Code sections 10113.71 and 10113.72 was a clear, proximate cause for the improper termination of the Morneau Policy, the denial of Plaintiffs Morneau and Strange's claims and the cause of injury and damage beyond the loss of policy benefits.

128.   From 2013 and thereafter, Mrs. Morneau was suffering from the onset of early-stage dementia and the progression of Alzheimer's, both of which, in combination with infection with COVID-19, would contribute to Plaintiffs Morneau and Strange's mother's death. Specifically, in 2016 and 2017, Mrs. Morneau began to manifest the symptoms of these diseases, which affected her judgment and capacity to deal with her personal affairs. Thus, in 2017, Mrs. Morneau was in specific need of the protections afforded by the Statutes. At that time, Mrs. Morneau was financially capable of making any premium payments required to keep the Morneau Policy in force and, based on her health and age, and given the substantial nature of the Policy, had no cause or reason to cease making premium payments on the Policy. In fact, there is not now, nor has there ever been, any evidence that Mrs. Morneau did not want and desire to maintain this investment. But for Defendant's multiple, consistent failures to follow the law from 2013 through Mrs. Morneau's death and denial of the claim, this action would not have been necessary. While not a requirement or condition of the law or Morneau Policy to explain the basis or motivation for the nonpayment of premium, Plaintiffs Morneau and Strange can and will demonstrate

that the injuries and damages suffered because of the violation of Defendant's bad faith, fraud, and abuse, were a direct result of Defendant's misconduct and violation of the Statutes. And Plaintiffs Morneau and Strange will contend that this was and remains common treatment by PLIC directed at its policy owners and beneficiaries.

129.   One element of Plaintiffs Morneau and Strange's claim for bad faith is the fraud and concealment undertaken by Defendant during the entirety of the parties' relationship, during which Defendant misrepresented and concealed from Mrs. Morneau material facts and information crucial to maintenance of the Morneau Policy.

130.   As further described herein, Defendant knew, or should have known, prior to January 1, 2013, that California law (1) mandated that 60-day grace periods applied to all policies in force as of January 1, 2013 and thereafter, regardless of whether the policy was issued or delivered prior to January 1, 2013; (2) that no lapse or termination was effective unless preceded by timely and proper notices of pending lapse or termination; (3) that notices must be sent not only to the policy owner, but also to designees, known assignees, or other persons having an interest in the individual life insurance policy; (4) that all policy owners must be annually provided notice of a right to designate said notice recipients; and (5) that failure to comply with these provisions leaves a policy in force, mandating payment of benefits upon the insured's death. Defendant knew or should have also known there was no official or proper public DOI opinion or guidance that should have been relied upon. Defendant knew, by 2017, if not earlier, that the Statutes did apply to the Morneau Policy and that the DOI had not taken a position on these issues.

131.   Despite knowledge of the applicability of these provisions to all policies issued or delivered in California and the impropriety of its actions, Defendant PLIC, with the aid and assistance of Does 1 through 300, made the conscious decision, ratified by managerial agents, officers, and directors, to not comply with the law, to misrepresent the true facts concerning the law, and ultimately to unilaterally terminate the Morneau Policy on improper grounds.

132.   PLIC's bad faith continued when it further made the conscious decision to make no attempt to contact their policy owners whose policies had been illegally terminated or beneficiaries whose claims for benefits had been improperly denied and inform such individuals of Defendant's misconduct, despite knowledge of Defendant's violation of the Statutes. Plaintiffs Morneau and Strange's mother was alive in August of 2021 and for a period of six months after the *McHugh* decision. During this time, Defendant PLIC could and should have made simple efforts to communicate with Plaintiffs Morneau and Strange and/or Mrs. Morneau to address the status of the Morneau Policy at a time while Mrs. Morneau was still alive. But rather than take simple steps to resolve any questions about the Morneau Policy, PLIC made the conscious decision to hide and conceal its multiple violations of law from Plaintiffs Morneau and Strange and Mrs. Morneau. It was, in fact, PLIC's plan to allow Mrs. Morneau to die and with that death eliminate any obligation to pay a claim owed under an active, in-force policy of insurance. It was PLIC's plan that, if an inquiry was made on the Morneau Policy, PLIC would first instruct its customer service department to indicate that no policy was in force on the date of Mrs. Morneau's death and then to maintain that position. If this did not work, it was PLIC's plan to then assert that the beneficiary had some duties not existent in the Morneau Policy, to then discourage a claim from being formally pursued because the statute of limitations had run, or some other excuse. And if the claimant was persistent and went to the DOI for help, PLIC had that covered as well. PLIC knew the DOI could not adjudicate such disputes. And, ultimately, if suit was filed, PLIC would just adjust the claim with the help of the courts.

133.   Defendant, by and through its officers and directors and other managerial agents, consciously ignored the application of California law regarding such notices and instituted a business practice and course of conduct designed to intentionally violate such provisions. Knowing these provisions were enacted in California to avoid forfeiture of policies, Defendant, by and through their officers, consciously ignored

and continue to consciously ignore the obligations imposed on Defendant to avoid payment of claims and continue to maintain the practice of encouraging unintended lapses of policies.

134. Plaintiffs Morneau and Strange, as well as Plaintiffs' late-mother, have suffered and will continue to suffer injuries, economic and non-economic damages, and harm legally caused by Defendant's past and ongoing failure to uphold the terms of the Morneau Policy. Plaintiffs Morneau and Strange have also suffered and will continue to suffer consequential economic and non-economic injuries in a nature and amount to be proven at the time of the trial. These injuries include emotional distress, concern, anger, and worry concerning the loss of coverage and the way Mrs. Morneau was treated, as well as how Plaintiffs Morneau and Strange have had to engage in this process merely to obtain benefits obviously owed.

135. Plaintiffs Morneau and Strange have also been required to retain legal counsel and have and will continue to incur attorney's fees and expenses. Defendant's conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiffs seek compensation in an amount within the jurisdiction of this Court to be proven at the time of trial. Plaintiffs Morneau and Strange thus seek full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the Morneau Policy.

136. Based on overwhelming and clear evidence, as explained herein, the acts will continue until Defendants, and each of them, are brought to account. The actions of Defendants described herein all constitute malice, oppression, and fraud.

137. Specifically, Defendants and their officers, directors, and managerial agents, have also made repeated intentional misrepresentations and engaged in active concealment, as heretofore discussed, thus constituting deceit and fraud. In performing these acts, Defendants and their officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment to avoid incurring liabilities and costs

associated with compliance with the law.

138.   Further, in engaging in these schemes and course of conduct, PLIC is acting in an oppressive fashion, using its wealth, power, and perceived influence, arising from its personal relationships with DOI personnel, to attempt to coerce customers and beneficiaries to refrain from the costs and risks associated with litigation of this nature. PLIC's oppression is calculated and results from a conscious decision-making process where, at the highest levels in the company, it has been determined that it is more economical to defy compliance with the law, exploit its relationship with a few DOI personnel and litigate those few policy owners or beneficiaries willing to engage in litigation, than merely comply with the law.

139.   And, finally, the conduct described herein is malicious and consciously undertaken, with a full understanding and appreciation that it is contrary to the law, contrary to sound business practices of legitimate life insurance companies and is motivated by a full appreciation that the rights of Plaintiffs and others are being ignored to further Defendants' interests.

140.   Finally, this conduct of Defendant PLIC is specifically motivated by a desire to retain substantial funds, representing decades of improper and illegal conduct. While Plaintiffs Morneau and Strange and Plaintiffs' late-mother are only one set of victims, the conduct of PLIC has injured thousands more.

141.   Plaintiffs Morneau and Strange allege that, consistent with California law, the cumulative effect of injury to others, as well as the economic benefit derived by Defendant PLIC from this improper conduct, is relevant and should be considered in the assessment of punitive and/or exemplary damages allowed. The conduct of Defendants, in violation of the express and implied obligations imposed on them, is and remains motivated by Defendants' conscious decision to retain wealth, resulting from decades of predatory business practices aimed at of taking from the elderly, the ill and the misinformed. The nature and extent of those ill-gotten gains, as well as the cumulative financial injury suffered by others, are relevant and important

considerations in determining the amount of any punitive or exemplary damages or awards.

## XII.   FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION
**(By Plaintiffs, Individually, on Behalf of the Estate of Caroly A. Morneau, and on Behalf of the Class)**

142.   Plaintiffs incorporate by reference every allegation contained above.

143.   California Business and Professions Code sections 17200, et seq., ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

144.   Defendant committed "unlawful" acts under the UCL by violating and continuing to violate Sections 10113.71 and 10113.72, including by failing to afford policy owners, including the subject Milan and Morneau Policies, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage.

145.   The subject Milan and Morneau Policies and the Class policies remain in force and benefits are payable upon the deaths of the insureds. Because of PLIC's violations of the California Insurance Code, PLIC's attempted terminations or lapses of policies were illegal and ineffective. The Class policies, in other words, remain in force and subject to payment of benefits. PLIC's failure to comply with the statutory terms has not effectively terminated any policy and Class members all remain in ongoing valid contractual relationships with PLIC.

146. PLIC's unlawful practices also included and continue to include Defendant's ongoing concealment of the rights afforded to policy owners under Sections 10113.71 and 10113.72. Defendant continues to conceal and mislead the policy owners and beneficiaries of the existence of a right to a 30-day lapse notice, a right to a 60-day grace period, a right to an annual designation, as well as the provisions of these Statutes that mandate strict compliance before any effective lapse or termination occurs.

147.   Moreover, PLIC has committed deceptive acts under the UCL by affirmatively and erroneously telling Class members that their policies had grace periods of less than 60 days and/or that their policies lapsed or terminated. The truth is that the policies had grace periods of at least 60 days and the policies had not actually lapsed or terminated.

148.   The unlawful and unfair business practices described above have proximately caused harm and injuries to Plaintiffs, the Class, and to the general public in the form of lost money or property. The money lost by the Class includes the policy benefits that PLIC is withholding, as well as the premiums it wrongfully collected.

149.   Pursuant to California's UCL, Plaintiffs, the general public, and the members of the Class are entitled to revival of their policies Defendant illegally terminated by means of such business practices. Examples of this lost money acquired illegally by Defendant include unrefunded premiums, withheld benefits, and diminution of value of policies.

150.   Defendant continues to this day to ignore or otherwise violate the Statutes and continues to ignore or repudiate otherwise valid and in-force life insurance policies that should be in effect today. Defendant continues to rob owners and beneficiaries of their lawfully owned policies and benefits. As such, and pursuant to California's UCL, Plaintiffs and the members of the Class and the general public are also entitled to injunctive relief, including public injunctive relief, against Defendant's ongoing business practices.

151.   If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiffs, the Class, and the general public will be irreparably injured.

152.   Plaintiffs, the general public, and the members of the Class have no plain, speedy, and adequate remedy at law.

153.   Defendant, if not enjoined by this Court, will continue to engage in the unlawful business practices described above, in violation of the UCL, in derogation

of the rights of Plaintiffs, the Class, and the general public.

154.  Plaintiffs' success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

155.  Private enforcement of these rights is necessary, as no public agency has pursued enforcement, and the interests Plaintiffs seek to protect are for the benefit of the general public. Plaintiffs are therefore entitled to an award of attorney's fees and costs of suit pursuant to, among others, California's UCL, the Common Fund Doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XIII.  <u>PRAYER FOR RELIEF</u>

Plaintiffs KEIR MILAN, Individually, and on behalf of the Class; CRISTIN MORNEAU and KELLY STRANGE, Individually, and Jointly as Successors-in-Interest to Carolyn A. Morneau, and on behalf of the Estate of Carolyn A. Morneau and the Class, seek relief as follows:

1.     For certification of this action as a class action;

2.     For a declaration of Plaintiffs' rights pursuant to the insurance policies issued by Defendants and a declaration that Defendants have violated the Statutes;

3.     For an injunction to issue against Defendants, stopping and remedying the ongoing violation of the Statutes, including public injunctive relief;

4.     For economic damages, according to proof where available;

5.     For noneconomic damages, according to proof where available;

6.     For interest where available;

7.     For restitution or other equitable relief, where available;

8.     For punitive damages and/or penalties, where available;

9.      For treble relief under Civ. Code § 3345, as well as under Welfare and Institution Code § 15657.3(d)(1);

FIRST AMENDED CLASS ACTION COMPLAINT

3:22-cv-01861-AHG

10. For attorney's fees and all litigation costs and expenses, where available; and

11. For such other and further relief as this Court deems just and proper.

## XIV. **DEMAND FOR JURY TRIAL**

Plaintiffs, in all their capacities, demand a jury trial.

Respectfully submitted:

DATED: November 26, 2024          **NICHOLAS & TOMASEVIC LLP**


By:      */s/ Alex Tomasevic*
         Craig M. Nicholas (SBN 178444)
         Alex Tomasevic (SBN 245598)
         225 Broadway, 19th Floor
         San Diego, California 92101
         Tel: (619) 325-0492
         Fax: (619) 325-0496
         Email: cnicholas@nicholaslaw.org
         Email: atomasevic@nicholaslaw.org
         **WINTERS & ASSOCIATES**
         Jack B. Winters, Jr. (SBN 82998)
         Sarah Ball (SBN 292337)
         8489 La Mesa Boulevard
         La Mesa, California 91942
         Tel: (619) 234-9000
         Fax: (619) 750-0413
         Email: jackbwinters@earthlink.net
         Email: sball@einsurelaw.com

         **SINGLETON SCHREIBER, LLP**
         Christopher R. Rodriguez (SBN 212274)
         Andrew D. Bluth (SBN 232387)
         Michelle M. Myers (SBN 236387)
         1414 K Street, Suite 470
         Sacramento, California 95814
         Tel: (916) 248-8478
         Email: crodriguez@singletonschreiber.com
         Email: abluth@singletonschreiber.com
         Email: mmeyers@singletonschreiber.com


         Attorneys for Plaintiff KEIR MILAN,
         Individually, and on behalf of the Class;
         Plaintiffs CRISTIN MORNEAU and KELLY
         STRANGE, Individually, and Jointly as
         Successors-in-Interest to Carolyn A. Morneau,
         and on Behalf of the Estate of Carolyn A.
         Morneau and the Class