1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  KEIR MILAN, Individually, and on behalf of the Class; CRISTIN MORNEAU and KELLY STRANGE, Individually, and Jointly as Successors-in-Interest to Carolyn A. Morneau, and on behalf of the Estate of Carolyn A. Morneau and the Class, | Case No.:  3:22-cv-01861-AHG  **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**  **[ECF No. 70]** |

16                                      Plaintiff,

17  v.

18  PROTECTIVE LIFE INSURANCE
19  COMPANY, an Alabama corporation; and
    WEST COAST LIFE INSURANCE
20  COMPANY, a Nebraska corporation,

21                                      Defendants.

22
23
24
25
26
27
28

                                    1

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 70. Defendants filed a Notice of Non-Opposition to the Motion on December 18, 2024. ECF No. 71. For the reasons set forth below, the Court **GRANTS** the unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    BACKGROUND

On July 5, 2022, Plaintiffs Cristin Morneau and Kelly Strange filed this action in San Francisco Superior Court on behalf of themselves and a proposed class of similarly situated individuals. ECF No. 1 at 12. Defendants removed this action to the U.S. District Court for the Northern District of California on September 1, 2022. ECF No. 1. Following removal, Defendants moved to transfer the action to this Court on October 18, 2022. ECF No. 9. The Honorable Richard Seeborg granted the motion to transfer on November 23, 2022. ECF No. 14. Upon transfer, this action was assigned to the Honorable Thomas J. Whelan and the undersigned on November 28, 2022. ECF No. 16.

In the operative First Amended Complaint ("FAC"), Plaintiffs allege that Defendants failed to comply with California Insurance Code Sections 10113.71 and 10113.72 ("The Statutes"). *See* ECF No. 64, FAC ¶¶ 1-15, 26-88. The Statutes, which went into effect on January 1, 2013, generally require life insurance companies to provide: a 60-day grace period before terminating a policy; notice of missed premium and of pending termination before terminating a policy; and an annual opportunity for insureds to designate additional addresses for receiving policy notices. Cal. Ins. Code §§ 10113.71, 10113.72. Plaintiffs Morneau and Strange alleged that Defendants unlawfully terminated their mother's life insurance policy in 2017 because she failed to make a premium payment, even though Defendants never provided their mother with the notices required under The Statutes. *Id.* ¶ 64. Plaintiffs asserted that because Defendants did not comply with The Statutes, the policy termination was ineffective. *Id.* ¶¶ 65-66. Thus, when their mother died in January 2022, Plaintiffs claimed their rights as beneficiaries to the proceeds of the policy. *Id.* ¶¶ 68-69. Plaintiff Milan similarly alleged that Defendants unlawfully terminated his life insurance policy in August 2022 when he purportedly missed a premium

payment, without complying with various provisions of The Statutes, including the requirement to annually notify him of a right to designate, the requirement to provide a 60-day grace period for nonpayment of premium, and the notice requirements. *Id.* ¶¶ 78-85. Plaintiff Milan alleges that Defendants' violations of The Statutes constitute a breach of their ongoing duty of good faith and fair dealing and a material breach and repudiation of Plaintiff Milan's life insurance policy, thereby excusing any further performance by Plaintiff Milan of tendering premiums. *Id.* ¶¶ 86-87. Defendants deny any liability to Plaintiffs.

The undersigned held an early neutral evaluation conference on February 8, 2023, but the case did not settle. ECF No. 23. The parties proceeded to litigate the case, conducting discovery and filing cross-motions for partial summary judgment on June 27, 2024. ECF Nos. 44, 45. The undersigned held a mandatory settlement conference on August 28, 2024, but the case did not settle. ECF No 52.

The parties continued to engage in settlement discussions through private mediators. They attended a mediation session before the Honorable Herbert B. Hoffman, a retired judge and well-respected mediator in the San Diego legal community, in July 2023. ECF No. 70-1, at 15. They retained Hunter Hughes, Esq., also a well-respected mediator, particularly in the area of class actions, for a second mediation in September 2024. *Id.* Although they did not reach a settlement at that mediation session, the parties ultimately reached agreement by accepting a mediator's proposal issued by Mr. Hughes. *Id.* at 16.

The parties notified the Court that they had reached a settlement agreement in October 2024. ECF No. 54. Following their settlement, the parties consented to the jurisdiction of the undersigned for the purposes of effectuating the settlement terms, including the filing of an amended complaint to merge this action with a related action pending in the U.S. District Court for the Eastern District of California, *Allen v. Protective Life Ins. Co.*, *et al.*, No. 20-cv-00530. ECF Nos. 60, 63, 64. The Court will review the settlement agreement to determine the propriety of certifying a settlement class and whether the proposed settlement is fair and reasonable.

## II.  TERMS OF THE SETTLEMENT AGREEMENT

The parties have submitted their proposed Settlement and Release Agreement and related notices to the Class ("Settlement Agreement") for the Court's review. ECF No. 70-3. The Settlement Agreement provides relief to all persons who own an interest in a "Class Policy," or "an individual life insurance policy issued or delivered in California by Protective that was not affirmatively canceled or terminated in writing by the Policy Owner and that: (i) lapsed or terminated for nonpayment of premium on or after January 1, 2013, without Protective first providing all the protections required by California Insurance Code Sections 10113.71 and 10113.72; and (ii) has a Maturity Date that did not expire prior to the Insured's death, or if the Insured is still living, prior to the date of the Preliminary Approval Order." ECF No 70-3 § 2.17. The Settlement Agreement provides two different forms of relief: injunctive relief and damages relief. The parties seek approval of a settlement class under Fed. R. Civ. P. 23(b)(2) for the injunctive relief; and under Fed. R. Civ. P. 23(b)(3) for the damages relief.

### A.  Injunctive Relief Class

The Settlement Agreement allows owners of a "Class Policy" who are part of the "Alive Population" to seek reinstatement of the Class Policy. ECF No. 70-3 § 3.2. The "Alive Population" is defined as "all living Policy Owners of any Class Policy … where the Insured is alive as of the date the Court enters the Preliminary Approval Order." *Id.* § 2.3. Damages are not available to this group of policy owners for an obvious reason: because the insured is still alive, there has been no event that would trigger payment under the Class Policy. Therefore, the parties seek approval of a Rule 23(b)(2) class for injunctive relief of restatement.

The Injunctive Relief Class Members will receive a short-form class notice that notifies them of their right to seek reinstatement and directs them to a settlement website to obtain the form. ECF No. 70-3 at 44. The Settlement Agreement sets forth Processes and Guidelines for Reinstatement Relief in Exhibit C. *Id.* at 61-66. Class Members seeking reinstatement must provide information about the insured, confirm their ownership of the

policy, and arrange to pay a Discounted Reinstatement Amount. ECF No. 70-3 at 80-96. The Discounted Reinstatement Amount is 90% of the premium that would have been due to keep the policy in place during the lapse period, plus an advance payment of three months of premium at the amount effective as of the Reinstatement Date. ECF No. 70-3 § 2.27. Reinstatement does not require underwriting approval, and there is no contestability period for a reinstated policy. *Id.* at 64. The Settlement Administrator is responsible for reviewing all reinstatement requests and taking "reasonable and customary steps" to resolve any deficiencies in the reinstatement requests with Class Members. ECF No. 70-3 § 8.3.

### B. Damages Relief Class

The Damages Relief Class includes owners of a "Class Policy" where the insured is deceased as of the date of preliminary approval of the settlement. *Id.* § 2.23. Damages Class Members will also receive a short-form class notice that directs them to the settlement website to submit a claim form. *Id.* at 44. Exhibit D of the Settlement Agreement sets forth the Processes and Guidelines for Damages Relief. *Id.* at 67-78. The claim form requires submission of documentation to confirm the death of the insured and the claimant's eligibility. *Id.* at 97-116.

Defendants will create a "Settlement Fund" of $80,000,000 that will be used to pay attorney fees and costs related to litigation and administration of the settlement. *Id.* §§ 2.63, 18.2. The settlement payout for each Damages Relief Class Member from the Settlement Fund will be determined based on a formula that considers their percentage of ownership in the Class Policy, the face amount of the Class Policy, and the number of claims submitted. *Id.* at 76 (showing exemplar calculation). The Settlement Fund will not revert in any way to the Defendants, and the Settlement Agreement includes procedures for handling unclaimed payments. ECF No. 70-1 at 18-19; ECF No. 70-3 §§ 18.2.5-18.2.6. Because the Damages Relief Class will be certified under Rule 23(b)(3), class members will have the opportunity to request exclusion from the settlement. *Id.* § 11.

### C.   Provisions Applicable to All Class Members

All Class Members are considered "Releasing Parties" under the Settlement Agreement. The scope of the Release is set forth in sections 12 and 13 of the Settlement Agreement and includes a release of all known and unknown claims "related to Class Policies (i) alleged in the operative Complaint, or (ii) which could have been alleged in the operative Complaint based on the same alleged facts, transactions, or occurrences;" and a waiver of California Civil Code § 1542. *Id.* §§ 12, 13.

All Class Members may submit written objections to the Settlement Agreement. *Id.* § 10. The short-form and long-form class notices provide directions on how to submit objections. *Id.* at 44, 49, 57-58.

The Settlement Agreement provides for a Special Master, specifically Thomas Sharkey, Esq., to "adjudicate any disputes regarding entitlement to relief pursuant to the Agreement, including, but not limited to, any disputes regarding the Discounted Reinstatement Amount, and Settlement Administrator's determinations regarding (i) whether a Claimant qualifies as an Authorized Claimant; (ii) the amount and Authorized Claimant is entitled to receive from the Class Benefit Fund; (iii) whether a Requestor qualifies as an Authorized Requestor; and (iv) whether a Policy Owner affirmatively canceled or terminated a policy in writing." *Id.* § 2.65.

The Settlement Administrator will make and deduct payments from the Settlement Fund for: (1) attorney fees in an amount up to $20,000,000 and litigation costs in an amount up to $240,000, to be determined by the Court; (2) Incentive Awards of $10,000 for each Class Representative, subject to Court approval; (3) settlement administration expenses; and (4) Special Master expenses. *Id.* § 3.3. The Settlement Administrator will also create a reserve fund to pay any future administration fees and expenses for the Administrator and the Special Master. *Id.* § 18.2.1. Any amounts remaining in the reserve fund once all claims have been resolved will escheat to the appropriate state and will not revert to the Defendants. *Id.* §§ 18.2.5-18.2.6.

## III.  LEGAL STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, parties may not settle claims on a class-wide basis without court approval. Fed. R. Civ. P. 23(e). Rule 23(e) sets forth the procedures that courts must apply to a proposed settlement of class claims. These procedures include: (1) notice to the class; (2) if the settlement proposal would bind class members, approval by the Court only after a hearing and only on finding that it is fair, reasonable, and adequate based on specific considerations; (3) identification of any agreement made by the parties in connection with the settlement proposal; (4) if the class action was previously certified under 23(b)(3), a new opportunity for class members to request exclusion; and (5) the opportunity for class members to object to the proposed settlement.

Where, as here, the parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In evaluating the propriety of certification for purposes of class-wide settlement, the Court must first assess whether a class exists. *Id.* Second, the Court must "carefully consider whether the proposed settlement is fundamentally fair, adequate, and reasonable, recognizing that it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness[.]" *Id.* (internal quotations and citation omitted).

As set forth in Rule 23(e), the Court's assessment of whether the proposed settlement is fair, adequate, and reasonable requires the Court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney fees, and (iv) the terms of the settlement agreement; and (D) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P.

7

23(e)(2)(A)-(D). *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation[,] 'if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'") (citation omitted). Importantly, for the Court to reach a determination that preliminary approval is appropriate, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

If the Court preliminarily certifies the class and finds the proposed settlement fair, adequate, and reasonable, it then appoints a class representative or representatives and class counsel.

## IV. CONDITIONAL CLASS CERTIFICATION UNDER RULE 23

The first step in the Court's analysis is to evaluate the propriety of class certification for purposes of class-wide settlement. Plaintiffs seek provisional certification of the Settlement Class under Rule 23(b)(2) as to members of the Injunctive Relief Class, which includes persons who are living Policy Owners of any Class Policy where the Insured is alive as of the date the Court enters the Preliminary Approval Order. ECF No. 70-3 ¶¶ 2.3, 2.36. Plaintiffs seek provisional certification of the Settlement Class under Rule 23(b)(3) as to members of the Damages Class, which includes persons associated with any Class Policy where the Insured is deceased as of the date the Preliminary Approval Order is entered. *Id.* ¶¶ 2.22, 2.23. The Settlement Agreement further defines the Class Period as the period from January 1, 2013, through the date the Court enters the Preliminary Approval Order. *Id.* ¶ 2.16.

To obtain class certification, Plaintiffs must provide facts in support of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of

representation. Fed. R. Civ. P. 23(a). As the party seeking class certification, Plaintiffs bear the burden of demonstrating that their proposed class meets each of these four requirements in addition to at least one of the requirements of Rule 23(b). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(b) is satisfied if: (1) prosecuting separate actions by individual class members would create a risk of either inconsistent adjudications with respect to individual class members, or a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other non-party class members or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate for the class as a whole; or (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)-(3). *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

The Court will first address whether the Settlement Class as a whole (both the Injunctive Relief Class and the Damages Class) satisfy the Rule 23(a) requirements.

## A. Rule 23(a) Requirements

### 1. Numerosity

To determine whether the numerosity requirement is met, the Court should look to the size of the proposed class. Many courts have held that numerosity is presumed to be met if a proposed class has forty or more members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.") (citation omitted). That said, the numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Although the absolute number of class

members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (1982), *vacated on other grounds*, 459 U.S. 810 (1982). *Accord A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 914 (9th Cir. 1964) (quoting *Advertising Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).

Here, the proposed settlement class includes approximately 115,000 insurance policies. ECF No. 70-2, Tomasevic Decl. ¶ 45. Plaintiffs also maintain that the size of the settlement class is ascertainable because its members may be identified by reference to Defendants' records, and Defendants have shared the relevant information from their records to facilitate the settlement process. *Id.* The Court agrees that the estimated size of the proposed settlement class would make joinder impracticable in this case. Therefore, the proposed settlement class meets the numerosity requirement.

### 2. Commonality

The commonality requirement of Rule 23(a)(2) requires that questions of law or fact be common to the class. "Commonality is construed permissively and is 'less rigorous than the companion requirements of Rule 23(b)(3).'" *Fine v. Kansas City Life Ins. Co.*, No. 2:22-cv-2071, 2023 WL 7393027, at *3 (C.D. Cal. Nov. 6, 2023) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). There is no requirement that all questions of law and fact be common to satisfy the rule; the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon*, 150 F.3d at 1019.

Here, the parties agree that for purposes of the settlement, the claims of the putative class members share common issues. ECF No. 70-1 at 30. Defendants had a common policy with respect to The Statutes, making the key factual question as to liability a common question. The fundamental legal questions presented by Plaintiffs' claims are also

3:22-cv-01861-AHG

common across the Class Policies, including whether Defendants complied with The Statutes; and, if not, whether Defendants' termination of any policies that lapsed since The Statutes took effect is valid legally. The Ninth Circuit has held that the commonality requirement is satisfied when a lawsuit challenges a system-wide practice or policy that affects all of the putative class members, even where there are factual differences among the individual litigants. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005) (finding the commonality requirement met where all members of a putative class of disabled prisoner plaintiffs challenged the same parole-related policies and practices implemented by the Board of Prison Terms under the ADA, despite having different disabilities); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (finding a "question of law or fact common to the class" on the basis that all putative class members challenged the constitutionality of the same INS practice). Further, courts in this Circuit have found that class certification of nearly identical claims is appropriate. *Farley v. Lincoln Benefit Life Co.*, 2023 WL 3007413, at *4 (E.D. Cal. Apr. 18, 2023); *Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at *8 (C.D. Cal. May 1, 2018); *Lee v. Great Am. Life Ins. Co.*, 745 F. Supp. 3d 1006, 1021-25 (C.D. Cal. Aug. 20, 2024) (certifying an injunctive relief class of still-living policyholders identical to the one proposed in this case, but denying without prejudice the motion to certify a damages class of beneficiaries identical to the one proposed in this case because the named plaintiffs purporting to represent that class—a married couple who were one another's beneficiaries but both still living—were not adequate class representatives). Therefore, the Court agrees that the commonality requirement is met.

### 3. Typicality

The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Although the commonality and typicality requirements often merge into one another, there is some distinction between the two. As opposed to

commonality, which requires common questions of law or fact to be shared among the claims of the putative class members, typicality is satisfied where the claims of the class representatives are typical of those of the class, and "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). In other words, the claims of the putative class representatives and the claims of the putative class must arise from the same events or course of conduct and must be based on the same legal theory. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Class certification is inappropriate "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d. Cir. 1990)). "The crux of both [the commonality and typicality] requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Armstrong*, 275 F.3d at 868 (quoting *Marisol*, 126 F.3d at 376) (internal quotations and alteration omitted).

Here, named Plaintiffs Cristin Morneau and Keir Milan assert that they were subject to the same policy regarding Defendants' compliance with The Statutes. *See* FAC ¶¶ 46-65; 78-85. For the Damages Class and the Injunctive Relief Class, respectively, Plaintiff Morneau's claims on the one hand and Plaintiff Milan's claims on the other hand arise from the same underlying facts and rest on the same legal theories as the claims of absent class members. Moreover, nothing in the operative complaint suggests that any claims of the named Plaintiffs would be subject to unique defenses that would not apply to the claims of similarly situated absent class members. Therefore, the Court agrees that the typicality requirement is met.

**4. Adequate Representation**

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." To determine whether this requirement is satisfied, the Court must resolve two questions: "(1): do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Anders v. Cal. State Univ., Fresno*, No. 23-15265, 2024 WL 177332, at *1 (9th Cir. Jan. 17, 2024) (quoting *Hanlon*, 150 F.3d at 1020). This inquiry is also relevant to the Court's inquiry into whether a proposed class settlement is fair under Rule 23(e). *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(2)(A). With respect to the first question, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)). A conflict is fundamental when it goes to the specific issues in controversy. *Id.* As to the second question, "the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *Id.* (quoting *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978)).

In support of the Motion for Preliminary Approval, Plaintiffs assert that "Class Representatives Cristin Morneau and Keir Milan have been instrumental in starting and shepherding this case over the years" through active participation in "discovery, depositions, [and] settlement discussions." ECF No. 70-1 at 23. Their allegations are the same as those of the absent class members. *See* FAC ¶ 89 (defining the class as "[a]ll owners and beneficiaries (where the insured has died) of individual life insurance policies issued or delivered in California by Defendants . . . which, on or after January 1, 2013, lapsed or terminated for nonpayment of premium" without Defendants first complying with The Statutes). There is no evidence of any conflict of interest between the named Plaintiffs and the class members. ECF No. 70-2 ¶ 51. Although the named Plaintiffs will receive

13

service awards under the proposed Settlement Agreement, service payments to class representatives "are fairly typical in class action cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942. Moreover, as in the *DVD-Rental* case, the proposed Settlement Agreement "provide[s] no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court." *See id.*

With respect to the second question regarding whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class, Plaintiffs' counsel confirms that they have contributed to the class recovery by putting their names on the case, helping to investigate the claims, participating in discovery, and assisting with settlement efforts. ECF No. 70-2 ¶ 51. The record reflects that the parties have engaged in settlement negotiations numerous times, including both court-facilitated and private mediation. *See* ECF Nos. 23, 52, 70-2 ¶¶ 40-43. These numerous attempts at settlement over several years show that Plaintiffs and their counsel did not prioritize obtaining a quick settlement for themselves over the interests of the class as a whole.

Further, Plaintiffs have explained their rationale for settling the case rather than pursuing further litigation. As discussed in the Motion for Preliminary Approval, even though the California Supreme Court held in 2021 that The Statutes apply to all life insurance policies that were in-force as of January 1, 2013, *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 220 (2021), the legal significance of Defendants' assumption to the contrary remains the subject of vigorous disagreement between the parties. ECF No. 70-1 at 10-12. Plaintiffs' position is that failure to comply with The Statutes "automatically renders any purported termination ineffective and leaves coverage in-force and payable upon death of an insured." *Id.* at 11. Defendants, in contrast, argue that to reinstate an affected policy, the policy owner must prove "causation by a preponderance of the evidence," and that issues such as "whether the policy owner intentionally missed their premiums or otherwise would have allowed the policy to lapse despite getting all the

notices and grace periods contemplated by" The Statutes are relevant to the causation analysis. *Id.* at 11-12. After the parties reached a settlement in this case, the Ninth Circuit sided with Defendants on this issue, finding that a plaintiff bringing a breach of contract claim against an insurance company on the basis of noncompliance with The Statutes "must not only allege a violation of the Statutes, but must also show that the violation caused them harm" by "demonstrat[ing] that they did not knowingly or intentionally let the policy lapse such that the Insurer's compliance with the Statutes would have caused the plaintiff to pay their premiums and retain the policy." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1193 (9th Cir. 2024). *Accord Moriarty v. Am. Gen. Life Ins.*, 2025 WL 687960, at *1 (9th Cir. Mar. 4, 2025). Notably, however, since the California Supreme Court has not yet decided the issue, the Ninth Circuit was tasked with "predict[ing] how the highest state court would decide the issue" in the *Small* decision. 122 F.4th at 1196 (quoting *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)). For that reason, whether the causation theory will remain the rule of law in California is subject to a possible future ruling by the California Supreme Court that runs contrary to the Ninth Circuit's conclusion.

The Ninth Circuit's recent resolution of the causation question coupled with the absence of controlling California Supreme Court authority on that issue counsel in favor of finding that settlement of this action is in both sides' best interest. Defendants will not have to confront a possible 23(c)(4) issue class certification, and Plaintiffs will not be forced to show causation for each class member. Nor will the parties have to contend with the uncertainty of a changing legal landscape on the causation issue should the California Supreme Court rule differently.

Based on these considerations, the Court finds that Plaintiffs have met their burden to establish that all four requirements of Rule 23(a) are satisfied as to both the Injunctive Relief Class and the Damages Class.

## B. Rule 23(b)(2) Requirements for the Injunctive Relief Class

Plaintiffs assert that the proposed Injunctive Relief Class satisfies the requirements of Rule 23(b)(2). Certification is appropriate under this subsection of Rule 23 upon a

showing that the Defendants "acted or refused to act on ground that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). *See also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that Rule 23(b)(2) does not require the Court "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal quotations and citation omitted). Therefore, 23(b)(2) class certification is not appropriate if "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in original). Nonetheless, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

As discussed above, it is not disputed that Defendants acted in the same way toward all persons in the Injunctive Relief Class with respect to providing the grace periods and notice required by The Statutes. Courts have found certification appropriate in similar cases. *E.g.*, *Golikov v. Walmart Inc.*, No. 2:24-CV-08211-RGK-MAR, 2025 WL 648342, at *6–7 (C.D. Cal. Feb. 27, 2025); *Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH-BGS, 2013 WL 6499698, at *4 (S.D. Cal. Dec. 11, 2013); *In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *3 (D. Ariz. Aug. 31, 2010). Plaintiffs have demonstrated that the requirements of Rule 23(b)(2) are satisfied with respect to the Injunctive Relief Class.

### C. Rule 23(b)(3) Requirements for the Damages Class

Plaintiffs seek certification of the Damages Class under Rule 23(b)(3), which requires Plaintiffs to establish that common questions of law and fact predominate, and a

class action would be superior to other methods for resolving the claims or the proposed class. The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The matters pertinent to the Court's analysis of whether the predominance requirement of Rule 23(b)(3) is satisfied include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

As noted in the Court's discussion of the commonality requirement, the legal and factual issues underlying this action are common to all members of the proposed settlement class. The predominance criterion, however, "is far more demanding" than the commonality requirement. *Amchem*, 521 U.S. at 624. The Court must also consider whether there are any factual or legal questions that differ among class members that might undermine class cohesion, and "caution" is warranted "when individual stakes are high and disparities among class members great." *Id.* at 624-25.

Here, the record does not give rise to any concern that there are disparities among the putative members of the settlement class to such an extent that common questions of law and fact among class members no longer predominate over questions affecting only individual members. All members of the Damages Class were owners of an insurance policy that lapsed or terminated after The Statutes became effective, but were not provided the notice required under The Statutes. EF No. 70-1 at 34. There is no variation in the remedy available to the Damages Class Members. *Id.* The settlement takes into account any variation in the face amount of the policies at issue by providing that Damages Class Members will be entitled to a *pro rata* share of the settlement amount based on the face amount of their policy. ECF No. 70-3, § 18.2.2.

Given that the putative settlement class has more than 115,000 members, a class

action is a superior method of adjudication to thousands of individual lawsuits. *See* Tomasevic Decl. ¶ 45. Plaintiffs also point out that class treatment is superior because without class notice, many Class Members may not realize they have a claim because of the nature of the alleged statutory violation, which is failure to provide notice. ECF No. 70-1 at 34. The class notice will give Class Members the opportunity to accept a negotiated resolution of them without further action on their part, or the alternative to opt out to pursue their claims independently. *Id.*

For these reasons, the Court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficient adjudicating the controversy. Accordingly, Rule 23(b)(3) is met.

### D. Preliminary Fairness Determination Under Rule 23(e)

Next, the Court must make a preliminary determination regarding whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2). Preliminary approval of the settlement is appropriate if the settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Sciortino v. PepsiCo, Inc.*, Case No. 14-cv-00478, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016).

In assessing the Settlement Agreement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. The Court must balance the following factors in making this assessment:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*

"At the preliminary approval stage, a full fairness analysis is unnecessary. Closer scrutiny is reserved for the final approval hearing." *Hawkins v. Kroger Co.*, Case No. 15-cv-2320, 2021 WL 2780647, at *3 (S.D. Cal. July 2, 2021) (internal quotations and citations omitted). *See also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at this stage[.] The court, therefore, will simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members.") (internal quotations and citation omitted).

Upon initial review, the Court finds preliminary approval of the Settlement Agreement is appropriate. First, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. As discussed, the parties reached the agreement following two separate settlement conferences before the undersigned and two private mediations with highly regarded neutrals, the Hon. Herbert Hoffman and Hunter Hughes. ECF Nos. 52, 56; ECF No. 70-1 at 15. The parties ultimately settled by accepting a mediator's proposal made by Mr. Hughes. *Id.* at 15-16. Prior to settling, the parties engaged in substantial investigative efforts, discovery, and motion practice. *Id.* at 14. Plaintiffs served four sets of written discovery. ECF No. 70-2 ¶ 36. Defendants produced more than 23,000 pages of documents and data regarding more than 114,000 policies. *Id.* Defendants also served a substantial amount of discovery on Plaintiffs, and the parties had to seek court assistance over discovery disputes. *Id.* ¶ 37. The parties also engaged in third party discovery and depositions. *Id.* ¶ 38. The use of a mediator on four separate occasions to negotiate settlement and the extensive discovery support a conclusion that Plaintiffs were appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 619-20 (N.D. Cal. 2014).

Second, the Court finds the Settlement Agreement has no obvious deficiencies and falls within the range of possible approval. With respect to the factors concerning the

strength of Plaintiffs' case and the risk of continued litigation, as detailed in the Court's discussion of the adequacy requirement, Plaintiffs have provided a thorough accounting of the risks inherent in continued litigation and the potential weaknesses of their case. ECF No. 70-1 at 25-26. Those risks of continued litigation are especially apparent where, as here, the parties settled the case only a few months before the Ninth Circuit sided with Defendants' position that causation must be shown to establish liability in cases such as the one at hand. *Small*, 122 F.4th at 1193. The specific relief afforded to Class Members is significant and weighs heavily in favor of approval. The face value of the policies that may be reinstated by the Injunctive Relief Class is more than $43 billion. ECF No. 70-2 ¶ 46. Policy holders in the Injunctive Relief Class will have the unusual benefit of hindsight in deciding whether to reinstate their policies retroactively. They will also receive a 10% discount on the premiums that will be owed if they opt for reinstatement. *Id.* The Damages Class provides for a gross settlement amount of $80 million for policies with an aggregate face amount of $467 million. *Id.* ¶ 47. If the policy owners had reinstated those policies, however they would owe approximately $200 million for premiums. The $80 million settlement amount should be measured against the $267 million net face value of those policies. The gross settlement amount is therefore approximately 30% of the net face value. The settlement value to both the Injunctive Relief Class and the Damages Class represents a fair, reasonable, and adequate recovery for Plaintiffs and the absent class members.

Turning to the experience and views of counsel, Plaintiffs' counsel have significant class action experience. Nicholas & Tomasevic, LLP has more than 18 years' experience handling class actions, including trials and settlements. *Id.* ¶¶ 2-17. Mr. Jack Winters of Winters & Associates has been involved in more than three dozen consumer class actions over the last 38 years, representing both plaintiffs and defendants. ECF No. 70-4 ¶¶ 3-5. His practice focuses on insurance-related cases. *Id.* ¶ 6. In 2023, Mr. Winters became Of Counsel to Singleton Schreiber, LLP, and continuing working on the matter with the assistance of other attorneys at that firm who have extensive litigation experience. *Id.* ¶¶ 19-22. "Because the parties' counsel are the ones most familiar with the facts of the

litigation, courts give 'great weight' to their recommendations. Therefore, plaintiffs' counsel's recommendations 'should be given a presumption of reasonableness.'" *Shannon v. Sherwood Mgmt. Co.*, No. 19-CV-01101-BAS-JLB, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (citations omitted). The Court finds it appropriate to afford a presumption of reasonableness to counsel's views that the proposed Gross Settlement Amount represents a fair and reasonable result for the class members.

Plaintiffs request an attorney fee award of 25% of the monetary relief portion of the settlement, or $20,000,000. They also request reimbursement of litigation costs up to $240,000. This is consistent with the Ninth Circuit's benchmark attorney fee award of 25% of the common fund in class action cases. *See, e.g.*, *Hanlon*, 150 F.3d at 1029; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Plaintiffs' counsel provided detailed arguments in support of the requested fee award, including a discussion of the risks they took in bringing the case, the extensive time, effort, and expense dedicated to the case, the skill and determination shown by class counsel, the results achieved, and the other cases class counsel turned down to devote to this matter. ECF No. 70-1 at 28-29; Tomasevic Decl. ¶¶ 52-57; ECF No. 70-4, Winters Decl. ¶¶ 12-30. Additionally, there is no "clear sailing" provision on attorney fees in the Settlement Agreement, and no reversion of unawarded funds to Defendants, which might reflect collusion or a fee-driven settlement. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011).

Plaintiffs have also provided an explanation for why they believe the requested service awards to the named Plaintiffs are fair. Plaintiffs "have lent their names to the case, thus subjecting themselves to public attention;" and they "helped draft the pleadings, searched for and produced documents, participated in discovery, assisted settlement efforts, and were actively engaged with counsel throughout the case." ECF No. 70-2 ¶ 51.

Plaintiffs request approval of Angeion Group, LLC, to be the Settlement Administrator and execute notice to the class, as discussed further below. The Court finds based on the Declaration of Steven Weisbrot, ECF No. 70-5, that Angeion Group is well

qualified to administer the notice tasks and should be appointed Settlement Administrator. Plaintiffs also request approval of 'Thomas Sharkey, Esq., or such other qualified individual who has been selected jointly by the Parties and approved by the Court to adjudicate any disputes regarding entitled to relief" under the Settlement Agreement. ECF No. 70-3 § 2.65. Mr. Sharkey has an excellent reputation in the San Diego legal community for his skills as a lawyer and mediator, particularly in the area of insurance law. The Court finds that Mr. Sharkey should be appointed as a Special Master for the purposes set forth in the Settlement Agreement. If the need arises to appoint a replacement for Mr. Sharkey, the Court will select one if the parties cannot reach agreement.

The Court is not yet in a position to gauge the reactions of class members to the proposed settlement, and there is no governmental participant in the case. Accordingly, based on the factors that are currently applicable to the Court's review, the Court preliminarily finds the proposed settlement fair, reasonable, and adequate under Rule 23(e)(2).

### E. Class Notice

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B). The Rule further states that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

1   Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

2         Upon review of the proposed Class Notice (Exhibits A and B to the Settlement

3   Agreement), and the additional documents explaining the guidelines for relief to the

4   Damages Class (Exhibit C) and the guidelines for relief to the Injunctive Relief Class

5   (Exhibit D), the Court finds the notice complies with all requirements of Rule 23. The

6   notices provide all of the information required by Rule 23(c)(2)(B) in plain, easily

7   understood language, and fairly apprise class members of the terms of the settlement, the

8   options open to dissenting class members, and the methods by which reinstatement will

9   proceed or their damages will be calculated.[1]

10        As for the manner of notice, the Settlement Agreement provides that Defendants will

11  deliver the Class list to the Settlement Administrator within 30 days after the Court grants

12  preliminary approval of the settlement. ECF No. 70-3 § 7.1. The Settlement Administrator

13  will mail the within 60 days thereafter. *Id.* § 7.2. Before mailing the Class Notice, the

14  Administrator shall update the class member addresses using the National Change of

15  Address database. *Id.* § 7.2.2. If any Class Notice is returned as undeliverable, the

16  Settlement Administrator will take reasonable steps to attempt delivery. *Id.* § 7.2.2. In

17  addition to notice by mail, the Settlement Administrator will engage in an advertising

18  campaign via internet and social media and print publications. ECF No. 70-5 ¶¶ 23-34.

19        The Settlement Administrator will create and maintain a settlement website with

20  information about the case, including "information regarding the nature of Action, a

21  summary of the substance of the Settlement, a copy of [the Settlement] Agreement, the

22  Class definition, the procedure and time period to request exclusion from and/or object to

23  the Settlement, and the date set for the Final Approval Hearing." *Id.* § 7.3. The settlement

24  website will also include the Claim Form and Request for Reinstatement Form. *Id.* The

25  Settlement Administrator will also provide telephone support for Class Members. *Id.* § 7.4.

26  _____

27  [1] The Court notes two typographical errors in the long form notice that need to be corrected:

28  1) on page 5, "Relieve" should read "Relief; and 2) on page 12, the heading for Question 17 is missing the word "for."

The Settlement Administrator will be responsible for reviewing all Claim Forms submitted by the Damages Class and Reinstatement Request Forms submitted by the Injunctive Relief Class and determining whether they are timely and complete. ECF No. 70-3 § 8.3. The Settlement Administrator will take steps to resolve any incomplete or deficient claims. *Id.* § 8.3. The Settlement Administrator will maintain thorough records and report to the parties on the status of claims and requests for reinstatement. *Id.* §§ 7.5, 8.5.

The Court finds the parties' proposed notice and means of delivery of the notice to the class members constitutes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Therefore, the Court approves the Class Notice and the notice plan set forth in the Settlement Agreement and the Weisbrot Declaration, ECF No. 70-5.

## F. CONCLUSION AND ORDER

1.    The Court **GRANTS** preliminary approval of the Settlement and the Settlement Class based upon the terms set forth in the Settlement Agreement filed as an Exhibit to the Motion for Preliminary Approval. All terms herein shall have the same meaning as defined in the Settlement Agreement. This action is provisionally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action for purposes of settlement only with respect to the proposed Settlement Class. The Court has determined only that there is sufficient evidence to support a preliminary finding that the proposed settlement is fair, adequate, and reasonable. The Court will make a definitive determination at the hearing on the motion for final approval of class action settlement (the "Final Approval Hearing") as to whether the Settlement Agreement is fair, adequate and reasonable.

2.    For purposes of this Settlement Agreement and this Preliminary Approval Order only, the Court hereby certifies a class of Class Members as described in the Settlement Agreement, specifically: "all owners and beneficiaries (where the Insured has

died as of the date of the Preliminary Approval Order) of Class Policies," where "Class Policy", or the plural thereof refers to:

> an individual life insurance policy issued or delivered in California by Protective that was not affirmatively canceled or terminated in writing by the Policy Owner and that: (i) lapsed or terminated for nonpayment of premium on or after January 1, 2013 without Protective first providing all the protections required by California Insurance Code Sections 10113.71 and 10113.72; and (ii) has a Maturity Date that did not expire prior to the Insured's death, or if the Insured is still living, prior to the date of the Preliminary Approval Order.

3.     Class Members generally fall into one of two categories, depending on whether the insured(s) under the relevant policy is still alive (the "Injunctive Relief Class"), or whether the insured(s) has died, thus potentially entitling the policy beneficiaries to death benefits (the "Damages Class"). The former are entitled to Injunctive Relief only under the terms of the Settlement, and they and their claims are hereby certified on a non-opt-out basis under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Damages Class and claims, however, which includes potential damages relief under the Settlement, are hereby certified with opt-out rights, pursuant to Federal Rule of Civil Procedure 23(b)(3).

4.     For purposes of the Settlement Agreement and this Preliminary Approval Order, the "Settlement Class" means all members of: a) the Injunctive Relief Class, and b) the Damages Class. The "Injunctive Relief Class" means all living Policy Owners of any Class Policy (or if the Policy Owner of a Class Policy is deceased, that Policy Owner's successor in interest) where the Insured is alive as of the date the Court enters this Preliminary Approval Order. The "Damages Class" means all persons associated with any Class Policy where the Insured is deceased as of the date this Order is entered who do not submit a timely and valid Request for Exclusion to the Settlement Administrator pursuant to the terms of the Settlement Agreement.

5.     For purposes of the Settlement Agreement and this Preliminary Approval Order—including the Class definition—"Protective" refers to Defendant Protective Life

Insurance Company, a Tennessee Corporation ("PLICO"), and the following companies but only to the extent PLICO was financially responsible for the payment of benefits on policies issued by these companies as of the Final Lapse Date of each Class Policy (*e.g.*, as a co-insurer, re-insurer, or successor insurer): West Coast Life Insurance Company; Protective Life and Annuity Company; Athene Annuity & Life Assurance Company; Reliance Standard Life Insurance Company; Standard Insurance Company; Voya Life Insurance Company; Aetna Life Insurance Company; Anthem Life Insurance Company; American General Life Insurance Company; Jefferson National Life Insurance Company; John Hancock Life Insurance Company; MONY Life Insurance Company; MONY Life Insurance Company of America; MONY Life Insurance Company of Boston; Great-West Life & Annuity Insurance Company; Commonwealth Annuity and Life Insurance Company; Everence Association Inc.; Equitable Financial Life Insurance Company of America; First Variable Life Insurance Company; Humana Dental Insurance Company; Nationwide Life Insurance Company; Optum Insurance of Ohio, Inc.; Sunset Life Insurance Company of America; Unum Life Insurance Company of America; Lincoln National Life Insurance Company; and Zurich American Life Insurance Company.

6.      The Court approves, as to form and content, the Class Notice in substantially the form attached as Exhibits A and B to the Settlement Agreement. The Court finds that the methods selected for communicating the preliminary approval of the Settlement Agreement to Class Members is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons entitled to notice, and therefore satisfies due process.

7.      The Parties are hereby directed to comply with the data exchanges and notice and administration plan as described in the Settlement Agreement.

3:22-cv-01861-AHG

8.    The Court sets the following deadlines:

| Deadline | Event |
|---|---|
| On or before May 22, 2025 | Defendants shall provide the Settlement Administrator with the names and last known addresses of all known or suspected Settlement Class Members associated with each Class Policy. |
| On or before July 21, 2025 | The Settlement Administrator will send Class Notice to all Settlement Class Members in the manner set forth in the Settlement Agreement and execute the advertising campaign described in the Weisbrot Declaration. |
| On or before August 11, 2025 | Class Counsel shall file a Motion for Approval of Attorney Fees, Costs, and Service Payments for the named plaintiffs. The Motion and all supporting documents shall be posted to the settlement website so that Class Members have the opportunity to review it before the deadline to object to or opt out of the settlement. |
| September 19, 2025 | Last day for any Settlement Class Member to submit a Claim Form or Reinstatement Request Form |
| September 19, 2025 | Last day for any Damages Class Member to submit a Request for Exclusion to the Settlement Administrator via email, First Class Mail, or the Settlement Website (pursuant to the Settlement Agreement and its Exhibits). The Request for Exclusion must be signed by the Damages Class Member and include the following: (i) the Class Member's name, address, email address (if any), and telephone number; (ii) a clear statement that the Class Member wishes to be excluded from the Damages Class; (iii) a certified copy of the Insured's death certificate; (iv) due proof of that Class Member's status as a beneficiary of a Class Policy as of the Final Lapse Date; and (v) if represented by legal counsel, the name, address, email address, and telephone number of that legal counsel. The Request for |

| | Exclusion must be electronically submitted to the Settlement Administrator or post-marked (if submitted via mail) on or before the Opt-Out Deadline. |
|---|---|
| September 19, 2025 | Last day for any Settlement Class Member to submit an objection to the Settlement. Only Settlement Class Members may object to the Settlement Agreement, including contesting the fairness of the Settlement Agreement, and/or amounts requested to be paid from the Settlement Fund, including attorney fees, litigation costs, administration costs, and amounts reserved for costs of the Special Master. Any Settlement Class Member who wishes to object to any term of the Settlement Agreement shall provide the Settlement Administrator with a letter or other document clearly identifying who the objecting Class Member is (along with their contact information), clearly stating the Class Member's intent to object to the Agreement and rationales for the objection(s), and stating whether the Class Member intends to appear at the Fairness Hearing for purposes of objecting. All written objections must be either postmarked and mailed via First-Class mail or electronically submitted to the Settlement Administrator. |
| On or before October 6, 2025 | Class Counsel shall file with the Court all written objections that were timely submitted to the Settlement Administrator. If any untimely written objections are submitted after the deadline, Class Counsel shall file a list of such untimely objection notices with the Court that shall include the name of the submitting Class Member and the date the untimely objection was postmarked or otherwise submitted to the Settlement Administrator. |
| On or before October 6, 2025 | The Settlement Administrator will provide a signed declaration suitable to Class Counsel and Defendants' counsel for filing in Court |

3:22-cv-01861-AHG

| | attesting to its due diligence and compliance with all of its obligations under the Settlement Agreement. |
|---|---|
| On or before October 10, 2025 | Class Counsel shall file a Motion for Final Approval of the Settlement. The Motion and all supporting documents shall be posted to the settlement website. Class counsel must give notice to any objecting party of any continuance of the hearing of the motion for final approval. |

9.    Injunctive Relief Class Members are bound by the Settlement Agreement and may not opt out, although they may object to the Settlement according to the terms of this Order and the Settlement Agreement.

10.    Every Damages Class Member who does not submit a timely and valid Request for Exclusion is deemed to be entitled to all benefits and bound by all terms and conditions of the Settlement, including the Releases under Paragraphs 12–14 of the Settlement Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

11.    Every Damages Class Member who submits a valid and timely Request for Exclusion is not considered to be a Settlement Class Member and will not receive any payments under the Settlement Agreement or have the right to object to the Settlement Agreement.

12.    The Court appoints, for settlement purposes only, Craig Nicholas and Alex Tomasevic of Nicholas & Tomasevic, LLP; Jack B. Winters and Sarah Ball of Winters & Associates; and Michelle Myers of Singleton Schreiber, LLP as Class Counsel for all Class Members. The Court preliminarily approves Class Counsel's request for attorney fees and litigation costs, subject to final review and approval by the Court.

13.    The Court appoints, for settlement purposes only, Cristin Morneau and Keir Milan as the Class Representatives. The Court preliminarily approves the requested service payments of $10,000 to each Class Representative, subject to final review and approval by

3:22-cv-01861-AHG

the Court.

14.     The Court appoints Angeion Group, LLC as the Settlement Administrator to conduct all Class notice and administration activities contemplated by the Settlement Agreement. The Court preliminarily approves the estimated Settlement Administration Expenses for Angeion's work, subject to final review and approval by the Court.

15.     The Court appoints neutral Thomas Sharkey, Esq., of Judicate West, as contemplated by the Settlement, to adjudicate any disputes regarding entitlement to relief pursuant to the Settlement Agreement, including, but not limited to, any disputes regarding the Discounted Reinstatement Amount, and Settlement Administrator's determinations regarding  (i) whether a Claimant qualifies as an Authorized Claimant; (ii) the amount an Authorized Claimant is entitled to receive from the Class Benefit Fund; (iii) whether a Requestor qualifies as an Authorized Requestor; and (iv) whether a Policy Owner affirmatively canceled or terminated a policy in writing.

16.     A Final Approval Hearing shall be held on **October 24, 2025** at **2:00 p.m.** in **Courtroom 2C** of the United States District Court, Southern District of California, located at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101 to consider the fairness, adequacy and reasonableness of the proposed Settlement preliminarily approved by this Order, including without limitation, ruling on any objections to the Settlement; Class Counsel's petitions for (i) an award of attorney fees and costs; (ii) approval of service payments to Class Representatives; (iii) approval for payment of the Settlement Administration Expenses incurred to date; and (iv) approval for payment of the Special Master's expenses incurred to date, all of which, if approved, shall be paid from the Settlement Fund. Any person planning to attend the hearing should confirm upon arrival at the courthouse that the courtroom where the hearing will take place has not changed. That information is available on the first floor of the courthouse and on the Court's website.

17.     If for any reason the Court does not execute and file a Final Approval Order and Judgment, or if the Effective Date, as defined in the Settlement Agreement, does not

3:22-cv-01861-AHG

occur for any reason, the proposed Settlement Agreement that is the subject of this order, and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement Agreement.

18.    The Court expressly reserves the right to adjourn or continue the Final Approval Hearing from time to time without further notice to members of the Class.

**IT IS SO ORDERED.**

Dated: April 22, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:22-cv-01861-AHG