|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| 11 | KEIR MILAN, individually, and on behalf of the Class; CRISTIN MORNEAU and KELLY STRANGE, individually, and jointly as successors-in-interest to Carolyn A. Morneau, and on behalf of the Estate of Carolyn A. Morneau and the Class, | Case No.: 3:22-cv-01861-AHG |
| | | **ORDER AND JUDGMENT:** |
| | | **(1) GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES, REIMBURSEMENT OF COSTS, ADMINISTRATION EXPENSES PAYMENT, AND CLASS REPRESENTATIVE SERVICE PAYMENTS; and** |
| | Plaintiffs, | |
| | v. | |
| | PROTECTIVE LIFE INSURANCE COMPANY and WEST COAST LIFE INSURANCE COMPANY, | **(2) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Defendants. | **[ECF Nos. 74, 83]** |

Before the Court are Plaintiffs Keir Milan, Cristin Morneau, and Kelly Strange's (collectively, "Plaintiffs") Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorney Fees, Costs, Administration Expenses Payment, and

Class Representative Service Payments. ECF Nos. 74, 83.[1] A hearing on these motions was held on October 24, 2025. ECF No. 84.

Based on the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement and **GRANTS** Plaintiffs' Motion for Attorney Fees and Costs, Administration Expenses Payment, and Class Representative Service Payments.

**I.  BACKGROUND**

On July 5, 2022, Plaintiffs Cristin Morneau and Kelly Strange filed this action in San Francisco Superior Court as individuals. ECF No. 1 at 12. Defendant Protective Life Insurance Company removed this action to the U.S. District Court for the Northern District of California on September 1, 2022. *Id.* at 1. Following removal, Defendant moved to transfer the action to this Court on October 18, 2022. ECF No. 9. The Honorable Richard Seeborg granted the motion to transfer on November 23, 2022. ECF No. 14. Following transfer, this action was assigned to the Honorable Thomas J. Whelan and the undersigned. ECF No. 16.

The undersigned held an Early Neutral Evaluation Conference on February 8, 2023, but the case did not settle. ECF No. 23. The parties proceeded to litigate the case, conducting discovery and filing cross-motions for partial summary judgment on June 27, 2024. ECF Nos. 44, 45. The undersigned held a Mandatory Settlement Conference on August 28, 2024, but the case did not settle. ECF No 52.

The parties continued to engage in settlement discussions through private mediators. They attended a mediation session before the Honorable Herbert B. Hoffman, a retired judge and well-respected mediator in the San Diego legal community, in July 2023. ECF No. 70-1 at 15. They retained Hunter Hughes, Esq., also a well-respected mediator, particularly in the area of class actions, for a second mediation in September 2024. *Id.*

---

[1] Although Defendants did not file a formal notice of non-opposition, they confirmed at the hearing on this matter that they do not oppose any of the relief requested by Plaintiffs. ECF No. 84.

Although they did not reach a settlement at that mediation session, the parties ultimately reached agreement by accepting a mediator's proposal issued by Mr. Hughes. *Id.* at 16.

The parties notified the Court that they had reached a settlement agreement in October 2024. ECF No. 54. Following their settlement, the parties consented to the jurisdiction of the undersigned for the purposes of effectuating the settlement terms, including the filing of an amended complaint to merge this action with a related action pending in the U.S. District Court for the Eastern District of California, *Allen v. Protective Life Insurance Co., et al.*, No. 1:20-cv-530-JLT-CDB (E.D. Cal.). ECF Nos. 60, 63, 64. Pursuant to the terms of the settlement and with leave of Court, Plaintiff filed the operative First Amended Complaint on November 26, 2024. ECF Nos. 63, 64. The amended complaint added Plaintiff Keir Milan to the case as a class representative, added West Coast Life Insurance Company as a Defendant, and added certain class allegations and causes of action. *See* ECF No. 62.

In the operative First Amended Complaint, Plaintiffs allege that Defendants Protective Life Insurance Company and West Coast Life Insurance Company (collectively, "Defendants") failed to comply with California Insurance Code Sections 10113.71 and 10113.72 ("The Statutes"). *See* ECF No. 64 at ¶¶ 1–15, 26–88. The Statutes, which went into effect on January 1, 2013, generally require life insurance companies to provide: a 60-day grace period before terminating a policy; notice of missed premium and of pending termination before terminating a policy; and an annual opportunity for insureds to designate additional addresses for receiving policy notices. Cal. Ins. Code §§ 10113.71, 10113.72. Plaintiffs Morneau and Strange alleged that Defendants unlawfully terminated their mother's life insurance policy in 2017 because she failed to make a premium payment, even though Defendants never provided their mother with the notices required under The Statutes. *Id.* at ¶ 64. Plaintiffs asserted that because Defendants did not comply with The Statutes, the policy termination was ineffective. *Id.* at ¶¶ 65–66. Thus, when their mother died in January 2022, Plaintiffs claimed their rights as beneficiaries to the proceeds of the policy. *Id.* at ¶¶ 68–69. Plaintiff Milan similarly alleged that Defendants unlawfully

terminated his life insurance policy in August 2022 when he purportedly missed a premium payment, without complying with various provisions of The Statutes, including the requirement to annually notify him of a right to designate, the requirement to provide a 60-day grace period for nonpayment of premium, and the notice requirements. *Id.* ¶¶ at 78–85. Plaintiff Milan alleges that Defendants' violations of The Statutes constitute a breach of their ongoing duty of good faith and fair dealing and a material breach and repudiation of Plaintiff Milan's life insurance policy, thereby excusing any further performance by Plaintiff Milan of tendering premiums. *Id.* at ¶¶ 86–87. Defendants deny any liability to Plaintiffs.

On December 17, 2024, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, (ECF No. 70), which the Court granted on April 22, 2024. ECF No. 73. The preliminary approval order confirmed the process for notice to the Class. *Id.* at 26 (citing exhibits A and B to the settlement agreement, ECF No. 70-3 at 42–60). Notice was completed as ordered. On October 10, 2025, Plaintiffs filed an unopposed Motion for Final Approval of Class Action Settlement. ECF No. 83. The final approval hearing took place on October 24, 2025. ECF No. 84. No Class Members objected to the settlement, and no Class Members requested exclusion. ECF No. 83-1 at 9; ECF No. 82 at 5–6. The Court summarized the terms of the parties' Settlement and Release Agreement ("Settlement Agreement") in detail in its Order granting Preliminary Approval, and incorporates that summary herein. *See* ECF No. 73 at 4–6.

## II. LEGAL STANDARD

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing FED. R. CIV. P. 23(e)(2)). The Ninth Circuit Court of Appeals has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). When presented with a motion to finally approve a class action settlement, however, "judges have the responsibility of

ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### III. MOTION FOR FINAL SETTLEMENT APPROVAL

#### A. Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentee class members). In the present case, the Court previously granted Plaintiffs' motion for conditional class certification. ECF No. 73 at 8–18, 24. Accordingly, the Court reaffirms and incorporates by reference its prior analysis under Rule 23 of the Federal Rules of Civil Procedure as set forth in its Order Granting Plaintiffs' motion to conditionally certify the settlement class. *Id*. Accordingly, the Settlement Class is **CERTIFIED** for settlement purposes only.

#### B. Adequacy of Notice

Next, the Court must determine whether the Class received adequate notice. Rule 23(c)(2)(A) requires that a Rule 23(b)(2) settlement class receive "appropriate notice." FED. R. CIV. P. 23(c)(2)(A). Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617.

In its Preliminary Approval Order, the Court preliminarily approved the manner of notice of this class action and proposed settlement. ECF No. 73 at 22–24. On October 7, 2025, Plaintiffs filed the Declaration of Steven Weisbrot, president and CEO of Angeion Group, LLC, ("Angeion"), the Settlement Administrator retained by the parties in this action. ECF No. 82. The declaration details the actions taken by the Administrator, including mailing the class notice to Class Members; implementing a settlement

administration website and toll-free hotline that provides Class Members with information about the proposed settlement; and advertising via internet, social media, paid Google searches, and national and regional publications. *Id.* at 2–4. The Settlement Administrator declares that Angeion mailed a class notice to the 158,372 Class Members. *Id.* at 3. As of the close of the notice period, 156,833 Class Members (99.03%) received the class notice. *Id.* at 3 ("11,502 of the 13,041 Class Notices returned as undeliverable by the USPS were re-mailed to updated addresses"). The Administrator reports that, as of October 6, 2025, the Settlement website had been visited 27,105 times by 22,682 unique users, totaling 38,339 pageviews, since it was established on July 21, 2025. *Id.* at 4. Additionally, as of September 6, 2024, the toll-free number, which opened on July 21, 2025, had received 1,132 calls totaling 6,122 minutes. *Id.* at 5. The media notice campaign delivered over 7.2 million impressions. *Id.* at 4.

The mailed Notice and the newspaper publications advised the classes of the terms of the Settlement and of their rights including: (1) how to participate and how to receive payment or reinstatement; (2) how to object to the Settlement and to appear at the Final Approval Hearing; (3) how to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the Final Approval Hearing. ECF No. 82 at 12–13, 32–51. The Notice also displayed the Settlement website, www.lifeinsurancelapsesettlement.com, and the toll-free number, 1-844-901-4092. *Id.* The social media advertisements and paid Google searches invited users to click on the link to the Settlement website, which included the information from the mailed Notice, as well as a more detailed class notice, the Settlement Agreement, and many other documents. *Id.* at 4, 22–25.

Eighty-seven claim forms for damages relief and 238 claim forms for reinstatement relief were submitted. ECF No. 82 at 5. As of the date of this order, no Class Members objected to the settlement, and no Class Members requested exclusion. ECF No. 83-1 at 9. Furthermore, as required by the Class Action Fairness Act ("CAFA"), Angeion sent notice of the proposed settlement to the Attorneys General for all U.S. states and territories,

as well as the Attorney General of the United States. ECF No. 82 at 2, 9–10. Angeion issued the required notice on December 27, 2024. *Id.* Accordingly, the Court determines that the appropriate CAFA notice has been given. *See* 28 U.S.C § 1715(b) (requiring settling defendants give notice of a proposed class settlement to appropriate state and federal officials).

Accordingly, the Court determines that the Notice satisfied both the requirements of Rule 23 and due process, giving the settlement Class Members adequate notice of the Settlement.

### C. Fairness of the Settlement

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(2). In its Preliminary Approval Order, the Court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Settlement. *See* ECF No. 73 at 18–20. These factors include the adequacy of class representatives and class counsel, the non-collusive nature of the settlement negotiations, the degree of recovery on behalf of the Class Members, the risks attendant in continued litigation, the experience of class counsel, and the effectiveness of the proposed method of distributing relief to the class.

Further, it is established that the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Co-op. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, after receiving notice of the Settlement, no Class Members objected and no Class Members requested exclusion, (ECF No. 83-1 at 9), which weigh in favor of settlement.

Finally, no pertinent facts have changed since the Court reached its earlier conclusion in its Preliminary Approval Order. ECF No. 73. The Court at this juncture has found that the settlement negotiations were not collusive and that the parties approached their negotiations seriously and with the interests of the absent putative Class Members in mind. Thus, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e)

requirements as set forth in its Preliminary Approval Order. *Id*. Accordingly, the Court finds the settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

## V. ATTORNEY FEES AND COSTS

### A. Attorney Fees

"In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F. 3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id*. at 942; *see Laffitte v. Robert Half Int'l Inc.*, 1 Cal 5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."). "Whichever method is chosen, courts often employ the other method as a crosscheck that the award is reasonable." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). Irrespective of which methodology a court uses, the court cannot apply it mechanically or formulaically, but must ensure that the fee award is reasonable. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

Under the percentage-of-recovery method, the benchmark for a reasonable fee award in the Ninth Circuit is 25% of the common fund. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). The court, however, must consider all the circumstances of the case to determine an appropriate rate, including the results achieved, the risk counsel took in pursuing the case, incidental or non-monetary benefits of the litigation, and the time and money counsel expended on the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–

50 (9th Cir. 2002). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Here, Class Counsel requests an award of attorney fees in the amount of $20,000,000.00, which is 25% of the monetary relief portion of the settlement. ECF No. 74-1. When considering the entire settlement, which includes significant[2] injunctive relief and a ten percent discount on back premiums owed, the requested attorney fee award seeks less than the traditional benchmark. *See* ECF No. 74-1 at 17; *see, e.g.*, *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir. 2014) (finding that the "district court acted within its proper discretion when it found that the settlement contains significant benefits for Plaintiffs beyond the cash recovery, and thus that the award, at about a third of the lodestar amount, was reasonable").

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050; *Dexter's LLC v. Gruma Corp.*, No. 23-cv-212-MMA-AHG, 2023 WL 8790268, at *9 (S.D. Cal. Dec. 19, 2023) ("the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method"). Class Counsel have a lodestar of $8,384,248.80,[3] which represents a multiplier of 2.39 when compared to their request for attorney fees. ECF No. 74-1 at 27; ECF No. 74-2 at 12–13. Lodestar multipliers can range from 1 to 4. *See, e.g., Vizcaino*, 290 F.3d at 1051 n.6

---

[2] "Defendants must offer to reinstate over $43 billion in terminated coverage, as measured by policy face value, to over 100,000 Class Policies where the named insured is still alive [], without requiring proof of insurability." ECF No. 74-1 at 18. "To date, 238 Class Members from the Alive Population have submitted reinstatement requests which, if reinstated, would amount to restoration of $20,414,570.14 in policy value." ECF No. 83-2 at 2.

[3] *See* ECF No. 74-2 at 17 (4,943 hours for $3,116,785.00 for Nicholas & Tomasevic LLP); ECF No. 74-3 at 17 (8,821.3 hours for $5,267,463.80 for Winters & Associates and Singleton Schreiber LLP).

1  (affirming lodestar multiplier of 3.65 in light of complexity and risk of case and, upon
2  review of numerous common fund cases, noting that 83% of the multipliers were in the
3  one to four range); *Tanner v. Plavan Commercial Fueling, Inc.*, No. 24-cv-1341-BTM-
4  JLB, 2025 WL 2231304, at *6–*7 (S.D. Cal. Aug. 4, 2025) (finding loadstar multiplier of
5  2.29 to be reasonable); *Ludlow v. Flowers Foods, Inc.*, No. 18-cv-01190-JO-JLB, 2024
6  WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) (finding loadstar multiplier of 2.86 to be
7  reasonable, noting that "[t]he Ninth Circuit has recognized that multipliers typically can
8  range up to 4"); *Lazarin v. Pro Unlimited, Inc.,* No. C11-03609-HRL, 2013 WL 3541217,
9  at *8 (N.D. Cal. July 11, 2013) (finding lodestar multiplier of 3.36 was reasonable and did
10 not warrant a downward departure from 25% benchmark). Here, Class Counsel also
11 provided declarations and an itemization of hours alongside the areas of efforts they
12 managed, including researching and drafting, filing and opposing discovery and dispositive
13 motions, reviewing extensive data, driving difficult settlement negotiations, thoroughly
14 investigating the underlying facts of the action, and negotiating the terms and agreements
15 supporting the underlying settlement. ECF No. 74-2 at 12–13; ECF No. 74-3 at 17.

16     Other factors also weigh in favor of granting Class Counsel's requested fee award.
17 The Settlement confers substantial benefits upon the settlement class, particularly as
18 compared to settlements in similar actions. *See*, *e.g.*, *Bentley v. United of Omaha Life Ins.*
19 *Co.,* No. 2:15-cv-7870-DMG-AJW, ECF No. 227-1 at 7 (C.D. Cal. Feb. 15, 2022)
20 ($3,000,000 common fund for cash payment to 33 class members who were beneficiaries
21 to lapsed life insurance policies). Recovery to each Class Member in the present action
22 greatly exceeds this rate. *See* ECF No. 82 at 5 ($80,000,000 common fund for cash
23 payment, and 87 claim forms for damages relief submitted). Further, Class Counsel took
24 this case on a contingency fee basis and assumed the risk of non-payment, which weighs
25 in favor of the award. The experience of Class Counsel in litigating class actions of this
26 type—as discussed in this Court's Preliminary Approval Order—also supports Class
27 Counsel's request. ECF No. 73 at 20–21.
28 / /

As such, the Court approves a 25% Class Counsel fee award in the amount of $20,000,000.00.

### B. Litigation Expenses

Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. As of August 11, 2025, Class Counsel incurred $142,576.77 in litigation expenses. ECF No. 74-1 at 29; *see* ECF No. 84 (Class Counsel confirmed at the October 24, 2025, final approval hearing that the figure had not changed). No Class Member has objected to the request for reimbursement of litigation expenses. The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class and shall be reimbursed in full in the amount requested. The Court approves the request for litigation costs and expenses in the amount of $142,576.77.

### C. Administrative Costs

The Court preliminary approved the estimated Administrator costs to Angeion, the appointed Settlement Administrator. ECF No. 73 at 30. In this settlement, Angeion worked with voluminous and complicated data, prepared the Notices for mailing, mailed over 150,000 Notices, conducted necessary follow-up regarding returned Notices, disseminated online and print publications of the Settlement, maintained a toll-free hotline, and created the settlement website. ECF No. 82; ECF No. 83-1 at 20. Courts regularly award administrative costs associated with providing notice to the class. *See, e.g.*, *In re ImmunityBio, Inc. Sec. Litig.*, No. 23-cv-1216-GPC-VET, 2025 WL 1686263, at *16 (S.D. Cal. June 16, 2025) (awarding $350,000 for administrator expenses). Plaintiffs request the Court award an Administration Expenses Payment in the amount of $380,000.00 to the Settlement Administrator for its services. *See* ECF No. 82 at 6 ($282,503.75 for notice and administration services through September 30, 2025; estimated $97,496.25 to provide administration services through the conclusion of the Settlement; with an overall estimated total cost of $380,000.00). The Court concludes Angeion's costs were reasonably incurred

for the benefit of the Class. The Court approves Class Counsel's request for administrative costs in the amount of $380,000.00.

### D. Special Master Expenses

The Court appointed neutral Thomas Sharkey, Esq., of Judicate West, as contemplated by the Settlement, to adjudicate any disputes regarding entitlement to relief pursuant to the Settlement Agreement. ECF No. 73 at 30; *see* ECF No. 81 (Mr. Sharkey represented that he "will accept the appointment of Special Master in this matter"). Consistent with the Settlement Agreement, the Settlement Administrator is authorized to create a reasonable reserve from the Settlement Fund for payment of fees incurred by the Special Master. The Settlement Administrator will be required to provide a final accounting to the Court following completion of disbursement of the Settlement Fund that details the fees paid to the Special Master.

### E. Service Awards to Class Plaintiffs

Finally, Plaintiffs seek to provide $10,000 Class Representative Service Awards to Ms. Morneau and Mr. Milan.[4] ECF No. 74-1 at 29-30. "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal citation and quotations omitted). Named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The purpose of such awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

---

[4] Mr. Strange is not seeking representative service award. ECF No. 74-1 at 15 n.5 ("Plaintiff Strange was an important part too, but he is not seeking his own separate service award, leaving just a little bit more for the Class to take home.").

1  These awards are "fairly typical in class action cases," but are ultimately "discretionary."
2  *Id.* at 958.

3  Ms. Morneau and Mr. Milan each searched for and produced information and documents, were deposed, assisted settlement efforts, and were actively engaged with counsel throughout this case. ECF Nos. 74-4, 74-5. Given Plaintiffs' level of involvement in the case, the undertaking of the risk in bringing this action, and the fact that the amount of the request is consistent with those typically awarded as service payments, the court determines Plaintiffs' request is reasonable. *See, e.g., In re ImmunityBio, Inc.*, 2025 WL 1686263, at *15–*16 (approving $10,000 service award); *In re Stable Rd. Acquisition Corp. Sec. Litig.*, No. 21-cv-5744-JFW-SHKx, 2024 WL 3643393, at *16 (C.D. Cal. Apr. 23, 2024) (granting $10,000 service award to lead plaintiff); *Johnson v. U.S. Bank Nat'l Ass'n*, No. 19-CV-286 JLS-LL, 2020 WL 13652583, *3 (S.D. Cal. Aug. 20, 2020) (awarding $15,000 to $25,000 to class representatives). That the total value of the approved class representative service payments is 0.025 percent of the total amount of the Settlement further supports the requested award. Finally, there are no circumstances indicating the award would create a conflict between Plaintiffs and Class Members.

Thus, the service awards for the Class Representatives are reasonable. Accordingly, this Court awards $20,000 in Class Representative Service Payments to be divided as follows: (1) $10,000 to Cristin Morneau, and (2) $10,000 to Keir Milan.

## VI. CONCLUSION AND ORDER

Based on the foregoing and the entire record, the Court **GRANTS** Plaintiffs and Class Counsel's unopposed motion for final approval of the Settlement. ECF No. 83. The Court **ORDERS** as follows:

1. The Court **GRANTS** final approval of the proposed Settlement Agreement (ECF No. 83). All terms and provisions of the Settlement, including the release of claims contained therein, should be and hereby are ordered to be consummated, and the Parties shall effectuate the Settlement according to its terms;

2. This order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt out of the Settlement Agreement;

3. The Settlement, and this Final Approval Order, shall be forever binding on the Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and shall have res judicata and other preclusive effect in all pending and future claims, lawsuits, arbitrations or other proceedings maintained by or on behalf of any such persons, to the fullest extent allowed by law.

4. The Release, which is described in Sections 12 and 13 of the Settlement Agreement, is expressly incorporated herein in all respects, and is effective as of the date of this Final Approval Order, and forever discharges the Releasees from any and all Released Claims within the scope of the Release, which includes all known and unknown or unsuspected claims, complaints, causes of action, demands, damages, obligations, losses, costs, and liability as related to Class Policies (i) alleged in the operative Complaint, or (ii) which could have been alleged in the operative Complaint based on the same alleged facts, transactions, or occurrences; whether asserted individually or on behalf of the Class; whether known or unknown, whether suspected or unsuspected, whether direct or derivative; whether arising at law, in equity, or pursuant to any statute, ordinance, or regulation.  Separately, the Class Representatives have also waived all rights and benefits conferred by California Civil Code Section 1542.

5. Since no Class Member has been excluded from the Class, all Class Members are hereby permanently barred and enjoined from (1) filing, commencing, prosecuting, maintaining, intervening in, participating in as class members or otherwise, or receiving any benefits from, any lawsuit (including putative class action lawsuits), arbitration, administrative or

14

3:22-cv-01861-AHG

|   |   |
|---|---|
| 1 | regulatory proceeding or order in any jurisdiction, based on or relating to |
| 2 | the Released Claims or the claims or causes of action, or the facts and |
| 3 | circumstances relating thereto, alleged in the Amended Complaint; and (2) |
| 4 | organizing any Class Members into a separate class for purposes of |
| 5 | pursuing as a putative class action any lawsuit, arbitration, or other legal |
| 6 | proceeding or action (including by seeking to amend a pending complaint |
| 7 | to include class allegations, or seeking class certification in a pending |
| 8 | action) based on or relating to the Released Claims or the claims or causes |
| 9 | of action, or the facts and circumstances relating thereto, alleged in the |
| 10 | Amended Complaint or any other complaint encompassed in the Action. |
| 11 | The Court finds that issuance of this permanent injunction is necessary and |
| 12 | appropriate in aid of the Court's jurisdiction over the Action and to protect |
| 13 | and effectuate this Final Approval Order |

6. The Court **GRANTS** Plaintiffs' motion for attorney fees and costs, administration expenses, and class representative payments (ECF No. 74).

7. The Court **GRANTS** Class Counsel attorney fees in the amount of $20,000,000.00 plus Class Counsel's actual litigation costs in the amount not to exceed $142,576.77;

8. The Court **GRANTS** class representative awards to Plaintiffs for their services as follows: (1) $10,000 to Cristin Morneau, and (2) $10,000 to Keir Milan;

9. The Court **APPROVES** settlement administrator costs of up to $380,000, and authorizes the settlement administrator to create a reasonable reserve from the Settlement Fund to pay the fees of the Special Master. The settlement administrator must prepare a final accounting identifying all distributions made from the Settlement Fund, which Class Counsel must file with the Court within 45 days following completion of distribution of the Settlement Fund;

10. Without effecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over: (a) implementation and enforcement of the Agreement pursuant to further order of the Court until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the Parties shall have been performed pursuant to the Agreement; (b) any other action necessary to conclude this Settlement and to implement the terms of the Agreement; and (c) the construction and interpretation of this agreement.

11. Neither this Final Approval Order, nor the Settlement Agreement, nor any other document referred to herein or therein, nor any action taken to carry out this Final Approval Order is, may be construed as, or may be used as an admission or concession by or against Defendants of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings relating to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Defendants' denials or defenses, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the Settlement or to enforce the provisions of this Final Approval Order and the Settlement Agreement; provided however, this Final Approval Order and the Settlement Agreement may be filed in any action against or by Defendants or Releasees (as defined in the Settlement Agreement) to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim to the extent allowed by law.

/ /

12. This Final Approval Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. This putative class action (including the Amended Complaint), and all claims asserted therein or otherwise presented thereby, are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in the Settlement Agreement or this Final Approval Order. The Clerk of Court should close this case.

**IT IS SO ORDERED.**

Dated: October 24, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge